RILEY HOPSON v. THE STATE.

No. 12743.   Delivered June 27, 1930.
Reported in 30 S. W. (2d) 311.

The opinion states the case.

*Bishop & Holland,* of Athens, for appellant.

*Sam B. Spence,* Dist. Atty., and *Geo. W. Anderson,* Asst. Dist. Atty., both of Wichita Falls, and *A. A. Dawson,* State's Attorney, of Austin, for the State.

LATTIMORE, JUDGE.—Conviction is for bigamy, punishment being two years in the penitentiary.

The undisputed facts show that Louise Allison met appellant in Wichita County, Texas; after a courtship lasting about two months he asked her in Wichita County, Texas, to marry him, to which she agreed; they went to Tillman County, Oklahoma, just across Red River from Texas, and in Tillman County, Oklahoma, they obtained a marriage license and were there married by a Baptist minister on April 22, 1927, and the marriage license was returned and recorded; immediately after their marriage they returned to Wichita County, Texas; they kept their marriage a secret for about two weeks after which time they went to housekeeping and lived openly

and professedly as husband and wife in said Wichita County, Texas. That appellant had a former wife then living is also without serious dispute.

Article 490, P. C., reads as follows:

"Any person who has a former wife or husband living who shall marry another *in this state* shall be confined in the penitentiary not less than two nor more than five years."

It will be observed at the outset that our statute does not provide, as has been done in many states, that "the cohabiting together within this state, after a bigamous marriage elsewhere" is a specific criminal offense. The offense last mentioned is defined and a penalty fixed in Alabama, Iowa, Massachusetts, Minnesota, Missouri, Tennessee, Vermont, and probably other states. (See Note 83, page 1163, Vol. 7, Corpus Juris.) Under the express terms of said Article 490 P. C., and LaRose v. State, 29 Tex. Cr. App. 215, 15 S. W. 33, bigamy could not be predicated on the marriage by the minister because it did not take place "in this state." To avoid this predicament the state contended—and if this verdict and judgment stands it must be by upholding such contention—that by appellant and Louise Allison agreeing to take each other as husband and wife, said agreement being evidenced in part by entering into the ceremonial marriage in Oklahoma, followed and supported by living and cohabiting with each other in Texas, and where publicly acknowledging the relation of husband and wife, constituted a common-law marriage in Texas, and upon this alleged common-law marriage is this prosecution for bigamy predicated.

It is unnecessary to discuss at length whether a common-law marriage will support a prosecution for bigamy. That question has been definitely settled in the affirmative by our own court in Burks v. State, 50 Tex. Cr. R. 47, 94 S. W. 1040. That case answers appellant's contention that a common-law marriage cannot be consummated where either the man or woman has another lawful spouse then living. See also People v. Brown, 34 Mich. 340; People v. Mendenhall, 119 Mich. 404, 78 N. W. 325, 75 Am. St. Rep. 408. The validity *vel non* of the subsequent bigamous marriage is beside the point. All bigamous marriages are invalid because of a living spouse of one of the parties regardless whether the bigamous relations are entered into by ceremonial or common-law marriage.

Appellant requested the court to instruct the jury to return a verdict of not guilty because the uncontradicted evidence showed that the bigamous marriage was entered into in Oklahoma and not

in Texas; this the court refused to do. Appellant excepted to the ruling and brings this point forward in bills of exceptions 1, 2 and 3. Upon the decision of this question the case must turn. While the courts generally have recognized that marriage is a civil contract which may be entered into by the parties without the formality of a ceremony, yet the law for good reason looks with more favor upon ceremonial marriages than it does upon what is usually termed common-law marriages. Many instances are found in the books where parties have entered into common-law marriages, and subsequently for various reasons—such as to comply with the conventions, or to place the legitimacy of children beyond question, or to make property rights more secure—have confirmed their former relations by a ceremonial marriage; but no case has come to the writer's notice where parties, having first entered into a ceremonial marriage, proof of which was available, have found it necessary or desirable to base their relations upon a subsequent common-law marriage. The crime of bigamy consists in contracting the second marriage, one of the contracting parties having a spouse then living; the offense is completed by said marriage, and if the marriage be solemnized by a ceremony cohabitation is not necessary to constitute the offense of bigamy. The parties may immediately separate after the second ceremonial marriage has been consummated, but would still be guilty of bigamy. See Bethany v. State, 91 Tex. Cr. R. 59, 237 S. W. 262. See Beggs v. State, 55 Ala. 108, and other authorities cited under Note 75, page 1162, Vol. 7, Corpus Juris.

In the Bethany case, supra, accused married the second wife in March, 1921, before securing a divorce from his first wife in June, 1921. He did not cohabit with the second wife until after the divorce was granted, after which he remarried her. We quote from the opinion written by Presiding Judge Morrow as follows:

"It is the theory of the defense that the marriage on the 14th of March, not followed by a cohabitation, does not satisfy the law defining the offense of bigamy, wherein it is said: 'If any person who has a former wife or husband living shall marry another in this state, etc.' (Penal Code, Article 481.)

"In support of this theory, appellant and his wife testified that the minister who performed the ceremony omitted some of the usual formula, such as declaring them husband and wife, and their intent was not to enter into the marriage relation but simply to bind themselves to do so when, at a subsequent date, the appellant, by the entry of the contemplated divorce decree, might be free to do so. It

may be stated in this connection that the second marriage was performed by a minister at the request of the appellant. He presented a license regularly issued, which was duly returned by the minister, who declared in his testimony that the ceremony was regularly performed. This testimony supporting the verdict of the jury would be sufficient to conclude the appellant on the facts even if his defensive theory was a sound one. It is, in our opinion, however, not sound. The word 'marry' used in the statute, as applied to the second marriage, does not mean a valid one. All bigamous marriages are void. Cyc. of Law & Proc., vol. 5, p. 693; Hooter v. State, 88 Texas Crim. Rep., 265. According to the testimony of the appellant and his witnesses, he obtained a license to marry, and the ceremony was performed by the minister. This, according to the authorities, *completed the violation of the law.* Corpus Juris, Vol. 7, p. 1162, subdivision 15, note 75."

The conclusion was very clearly expressed that the ceremonial marriage, although not followed by cohabitation, completed the violation of the law. If the marriage there entered into completed the offense of bigamy in Texas, a similar marriage entered into by appellant and Louise Allison in Oklahoma completed the offense in that state.

In State v. Ray, 151 N. C. 710, 19 Am. & Eng. Ann. Cases, 566, may be found a case on the facts and law very similar to the one now before us. The statute of North Carolina had undertaken to supply the omission noticeable in our own statute, but because of the wording that particular provision had been held unconstitutional; therefore, at the time the Ray case was decided it was necessary for the bigamous marriage to occur in North Carolina, just as it is necessary under our statute for it to take place in Texas. Ray was living with his first wife in North Carolina; he separated from her, went into Virginia and there entered into a ceremonial marriage with another woman, returned with her to North Carolina where they lived together as husband and wife. The Supreme Court of that state said:

"Coming back into the state after a bigamous marriage elsewhere, and a living together by the parties as husband and wife, might and ordinarily would constitute the crime of fornication and adultery. State v. Cutshall, 109 N. C. 764, 14 S. E. 107, 26 Am. State Rep. 599. But there is nothing in this statute which makes such conduct a felony, or which deals or attempts to deal with it one way or another; and the expression 'or elsewhere'—that is, a biga-

mous marriage beyond the borders of the state—having been declared of no effect by the courts, because contrary to the law of the land, there is nothing in the statute which applies to the conduct of the defendant, and he is entitled to go quit of any further molestation by reason of any indictment predicated and necessarily dependent upon it.  There are decisions in many of the states, and by courts of recognized authority, sustaining convictions by reason of conduct similar to that imputable to defendant on this evidence, or upholding statutes condemning it.  Brewer v. State, 59 Ala. 101; Commonwealth v. Thompson, 2 Cush. (Mass.) 551; State v. Fitzgerald, 75 Mo. 571; State v. Palmer, 18 Vt. 570.  But in the cases cited, and all others of like import, so far as we have examined, the statutes in express terms made the 'cohabiting together within the state after a bigamous marriage elsewhere,' a specified criminal offense.  Thus, in the Missouri statute (State v. Fitzgerald, supra), the language is, 'Every person having a husband or wife living, who shall marry another person without this state, in any case where such marriage would be punishable if contracted or solemnized in this state, and shall thereafter cohabit with such person within this state, shall be adjudged guilty of bigamy.' "

The Ray case seems decisive of the present one in the absence from our Penal Code of a provision making it a felony for one to cohabit in this state with another person with whom a bigamous marriage has been contracted in another state.

Some light should be shed upon the place where the marriage occurred by the intent and understanding of the parties to the contract.  The state placed Louise Allison upon the witness stand.  Upon the point at issue she testified:

"I don't know whether it was Tillman County, Oklahoma or not where we were married, but we were married in the town of Davidson.  I guess it was in the state of Oklahoma.  *I did not* marry the defendant in Wichita County, Texas."

Davidson was shown to be in Tillman County, Oklahoma.  The evidence quoted shows that the parties themselves never had in mind entering into a common-law marriage in Texas.  They intended to marry—and we think they did marry—in Tillman County, Oklahoma.  If they contemplated common-law marriage in Texas why the ceremonial performance in Oklahoma?  Waiving the fact that the subsequent marriage was invalid because appellant had a former wife living—and that has nothing to do with ascertaining the fact of a second marriage or where it took place—suppose the parties

after the ceremonial marriage in Oklahoma had started to return to Texas and one of them had been killed in an accident and property rights depended upon whether they had been married in Oklahoma, would or could there have been any question about the marriage in Oklahoma having fixed their status as that of husband and wife? If not, then their living together as such in Texas added nothing to the status fixed by the marriage in Oklahoma. Having married under the ceremony and formality of the law in Oklahoma, it seems inconsistent to stamp their conduct in Texas as a common-law marriage. If it was, then unquestionably they married twice, first in Oklahoma by ceremonial law, and again in Texas by common law. Assuming the law in Oklahoma on the subject of bigamy to be the same as ours then the parties without doubt could be prosecuted in Oklahoma for the bigamous ceremonial marriage contracted there, and to sustain the state's position it would be necessary to hold that they also contracted a common-law marriage in Texas. It is not to be questioned that appellant and Louise Allison were married, but we cannot bring ourselves to believe they were married twice. If so, then every couple in this state who have recently crossed into a sister state and been married there to avoid the regulatory provisions regarding marriage license (Acts 41 Legislature, Reg. Sess., Chapter 114, page 260) and after the ceremony returned to Texas and lived together as husband and wife, may be said to have entered into a common-law marriage in Texas, notwithstanding the ceremony without the state may have been solemnized in conformity with every requirement of the law.

Living together in Texas after the bigamous marriage in Oklahoma may have and perhaps did render appellant's relations adulterous under the law of Texas, but not bigamous under the present statute.

The question presented may be of serious moment to border counties of the state, but the remedy should be by legislation and not by strained judicial construction.

Believing the court was in error in not directing a verdict of acquittal under the facts, it follows that the judgment must be reversed and the cause remanded, and it is so ordered.

*Reversed and remanded.*

LATTIMORE, JUDGE.—The proper decision of this case becomes of more importance for that it is one of first impression in Texas.

I can not agree to the opinion prepared by Judge Hawkins, agreement with which is suggested by Judge Morrow. I think same adopts an interpretation of the law which, however unintentional, may lead to the establishment of a precedent of grievously hurtful consequence, and same may be used to give law-breakers a free hand and put society at the mercy of freebooters abroad on our social seas in this day of much talk of increasing sexual crime.

Riley Hopson had a wife living in Texas. He met Louise Allison in Wichita Falls, courted her, proposed marriage, was accepted, and then took Louise across Red River for some reason where they went through a form of ceremonial marriage in Oklahoma, after which they came at once back to Wichita Falls, Texas, set up housekeeping as man and wife, publicly acknowledged and held each other out as such, cohabited, became the parents of a child, and otherwise agreed to take and be to each other husband and wife. Finding out the fact of the former marriage, appellant was indicted and convicted of bigamy. He interposed the defense variously raised, that our bigamy statute, Art. 490, P. C., makes the second marriage bigamous only when same takes place "In this State," and that this marriage took place in Oklahoma, hence the trial court was without jurisdiction. The State replied in effect that "In this State" appellant and the girl agreed to take each other for husband and wife, and did so; that this was accompanied by all those elements which make a complete common-law marriage,—hence there was a bigamous marriage "In this State." The court's charge submitted only this theory, and the jury were therein told that it was not necessary that there be any form of ceremony if the parties in Wichita County, Texas, agreed to take each other for husband and wife, and from that time on did live professedly in that relation. The indictment simply alleged that appellant, having a living wife on April 22, 1927, did unlawfully marry Louise Allison in the County of Wichita, State of Texas. Appellant asked a special charge, which was refused, to the effect that he should be acquitted because the testimony shows that he married the second time in Oklahoma.

My point is that what took place in Oklahoma between these people was a thing wholly void, an idle gesture, which required no court order to vacate or annul it, and that the opinion of the majority herein in effect vitalizes a corpse, gives substance to a shadow, sanctity to a void ceremony, by means of which holding

this man may take advantage of what was his own wrong and fraud from its inception; and that he may use it for a defense against a crime clearly committed *in this State,*—and not only he, but hereafter others like him.

This court, and all others, joins the text writers in harmonious declaration that a bigamous marriage is *void,* not merely voidable. In Bethany v. State, 91 Texas Crim. Rep. 59, upon citation of many authorities, Judge Morrow originally and Judge Hawkins on rehearing, said: "The word *Marry* used in the statute, as applied to the second marriage, does not mean a valid one. All bigamous marriages are void." In its able brief herein the State cites People v. Mendenhall, 119 Mich. 404, 75 Am. St. Rep. 408, in which the contention was made on behalf of the defense, as is made here, that the accused having a living wife could not be held guilty of bigamy upon proof of a common law second marriage. The court held otherwise. We quote from that opinion:

"It is a settled rule in this State that a marriage in fact may be shown by proof of an agreement between two persons of opposite sex to take each other presently as husband and wife, consummated by cohabitation . * * * it follows that such informal agreement constitutes a marrying within the meaning of Section 9280 of 2 Howell's Statute. It is none the less a marrying because one spouse is already married. It is true of every case of a bigamous marriage that the second marriage is void and as was stated in People v. Brown, 34 Mich. 339, 22 Am. Reports, 531, it is the entering into a void marriage while a valid marriage exists, which the statute punished.

"In Bishop on Statutory Crimes, Section 592, it is said: 'In a state where mutual consent alone constitutes matrimony, as with the first marriage, so with the second—no added formalities need be shown.' "

A thing that is *void* is of no effect; a nullity ab initio. See Cummings v. Powell, 8 Texas, 80. A thing that is void is as if never done, to all purposes, so that all persons may take advantage thereof. Franklin v. Kelley, 2 Neb. 79; Hone v. Woolsey (N. Y.) 2 Edw. Ch. 289. "A void judgment is in legal effect no judgment. By it no rights are devised. From it no rights can be obtained, it being worthless in itself. All proceedings on it are equally worthless." Words & Phrases, Vol. 8, p. 7340, citing many authorities.

In the face of all these and countless similar holdings, the majority have here announced the doctrine that what was done by this

appellant in Oklahoma may be invoked by him and used as a bar to prevent the legal consequences of the crime committed by him *in Texas*,—of consummating a bigamous common-law marriage in this State. I maintain the contrary.

It would doubtless be at once admitted that if A having a wife then living, should marry, in any way made legal, a dozen different women in succession,—he might be prosecuted and convicted for each such marriage, for bigamy. To be consistent, the majority of this court would have to lay down the rule that A, prosecuted for bigamy committed *in this State* under a ceremonial second marriage, might defend successfully on the proposition that he entered into the marriage relation under the terms of a common-law marriage at a prior time in another State. Indeed, drawing the lines of legitimate deduction yet closer, we would have to hold in line with the majority opinion, in a case of a marriage which would be lawful but for a former living spouse,—the person prosecuted for bigamy in any county in this State might defend by proving that in some other county of this State, at a prior time, the parties to such alleged bigamous marriage had entered into the same illegal relation. This brings me to the observation that it would hardly be contended that A, having a living wife, would not be guilty of bigamy in each county in which he might marry, in any way made legal, a separate and different woman each time; but we must conclude as this opinion affirms, that if for any reason satisfactory to them A, having a lawful wife, weds by ceremony in three different counties to some woman,—he could be prosecuted for bigamy but once, and that once of necessity in the county in which the first offense was committed. I confess this to me is curious reasoning. Surely when A marries unlawfully in C county, he violates the law against bigamy. Such ceremony would create no contract, establish no relation, affect no rights further than to be a thing forbidden by law, and for which A may be punished. I can not see for the life of me why this court should undertake to say that the law once infracted must forever remain broken as to this man's bigamy with this woman, so if for some reason satisfactory to them they thereafter go to D county and other counties and are there ceremonially married, the courts and officers would be impotent to prosecute them and punish them forsooth because of that void, null, worthless, illegal thing which they attempted in the first county where they tried to get married.

Suppose by way of illustration that Louise had gotten a divorce from Riley before she found out about wife No. 1,—and when

as is frequently the case had married him again, it seems clear that under the opinion of the majority Riley would be guilty of another offense of bigamy, for that the law having annulled and vacated the Oklahoma marriage, the parties would be free to commit bigamy again. In my opinion such conclusion would be wholly fallacious. There would be nothing for the law to vacate or annul. In no legal sense was what was done by the ceremony that was performed in Oklahoma valid, but on the contrary it was void ab initio, and the judgment of a dozen courts setting it aside, breaking bonds which never bound, could not add force to the fact of such nullity.

The way to stop crime is to enforce the law. If A marry one woman bigamously in different countries, states or counties, he should be punished just as he should if he married different women each time. It is unquestionably true that if A be once tried legally and the State attempt a second prosecution *for the same offense*, then and not until then, in the opinion of the writer, can A raise and thrash out the question of autrafois acquit or convict, which issue depends for settlement upon oneness of offense in fact and law. In the case before us the majority hold that we may raise the question and permit A to go free behind a smoke screen, a man of straw, whose origin and framework has no substance further than the proposition that having done wrong in Oklahoma, he is free now for all time in Texas.

The case of State v. Ray, 151 N. C. 710, is cited in the majority opinion as supporting the contention there made. The already length of my opinion compels short discussion. The opinion in the Ray case was by a divided court, the learned Chief Justice dissenting in a most unanswerable argument. Admittedly the majority opinion in that case overruled a recent unanimous contrary opinion by the same court. To my mind the only things in said opinion in anywise supporting the conclusion reached by the other members of this court,—are dicta. The facts in that case showed that Ray married E. T. in North Carolina; later moved to Indiana, where he obtained a divorce from E. T.; that later in Virginia he married A. B. and returned with her to North Caroline where they lived for three years and then separated. On his trial for bigamy the State combated the legality of the divorce obtained in Indiana on two grounds, viz.: lack of jurisdiction, and fraud. It appears from what has been stated that the facts in that case are very different from those before us in the instant case. Likewise the law of North Carolina here involved was wholly different from ours. The law of

that State provides that if one having a living spouse married another person in North Carolina *or elsewhere,* such offender should be guilty of bigamy, etc., and further provided that the case might be tried in any county where apprehended as if the offense had been actually committed in that county. Upon the authority of Cutshall v. State, 110 N. C. 538, it was held in the Ray case that one could not be convicted for a bigamous marriage occurring beyond the borders of North Carolina, and that the law was unconstitutional when it undertook to prosecute one for bigamy dependent upon a marriage which took place out of the State. It was shown in the opinion in the Ray case that there was a count in Cutshall case, supra, in the indictment which charged that after a bigamous marriage outside the State, the parties came back into North Carolina and lived together several years as husband and wife. Also that the Supreme Court held that the trial court rightly quashed said count because there was no such provision in the statute. This holding was approved in Ray's case, supra.

The case referred to is just enough like the case at bar to create confusion. There was no effort in that case to predicate conviction for bigamy on a common-law marriage entered into in North Carolina. Therein lies the fundamental difference between that case and the one before us. Here the State relied entirely upon a common-law marriage entered into *in this State.* In the Ray opinion the court was confessedly ruled by the prior case of Cutshall v. State, supra, in which the only count suggesting a prosecution even akin to the one now before us, charged that the bigamous marriage took place in another State,—thus showing that the State was depending upon a marriage which took place outside the State of North Carolina. As above indicated, this difference wholly distinguishes the Ray case and makes it of no value as authority here. Examination of that part of the opinion quoted in the majority opinion in this case shows that there is constant reference to a bigamous marriage *outside the State.* If in the instant case the indictment had alleged, and the court had followed that by his charge, and the State had relied for a conviction upon proof of a bigamous marriage consummated in Oklahoma, and followed by a living together in Texas, there would be a similarity between the Ray case and the instant case. Such, however, was not the case. The State here was not concerned about appellant's past misdeeds, neither did it rely upon same, but charged direct a bigamous marriage under the common law entered into *in Texas,* and this theory was set out in the charge

and found to be true in fact by the jury. I do not attach any importance to chance remarks of the young woman in question in reference to any set agreement to live together as husband and wife in Texas. The proof overwhelmingly shows there was such agreement and such fact. I think the judgment should be affirmed.

I respectfully record my dissent.