**Joseph Rodolfo CASTANOS, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 35299.

Court of Criminal Appeals of Texas.

Feb. 6, 1963.

Roger L. Moore, El Paso, for appellant.

Edwin F. Berliner, Dist. Atty., Jack N. Ferguson and Charles Andrew Gary, Asst. Dist. Attys., El Paso, and Leon B. Douglas, State's Atty., Austin, for the State.

McDONALD, Judge.

The offense is bigamy; the punishment, three years in the penitentiary.

The indictment charged that on or about January 19, 1962, the appellant did unlawfully marry Jenny Lee Doppelhauer in El Paso County, Texas, he having a former wife, Clarice Castanos, then living, whom he lawfully married on July 22, 1957.

The state adduced testimony from the witnesses, Mrs. Charles Andrews and her husband, Charles Andrews, and also from the prosecuting witness, Jennie Lee Doppelhauer. Mrs. Andrews testified that she met the appellant "through my husband"; that she had seen him on several occasions. When asked if appellant had ever introduced anyone to her as being his wife, she replied: "Yes, Mrs. Clarice," and stated that this occurred in September of 1961 on a dove hunt and picnic and that appellant mentioned his wife several times. The witness further related that appellant referred to Clarice as his wife and that he called her "Honey"; that "he had three children at that time, and she was expecting"; that she was introduced to her as Clarice and as his wife; that the woman, Clarice, talked to the children and indicated that they were his (appellant's); that in December, 1961, appellant "brought us that birth announcement, when his last baby was born" and that she asked how his wife and the baby were doing and he replied that "they were doing real nice"; that the birth announcement was signed Mr. and Mrs. Rudolfo Castanos; that twice she had seen this woman she knew as Clarice, at the picnic in September, and in October, but had not seen her since. It was further shown upon cross-examination of this witness that the

picnic "wasn't overnight; just one day." The witness did not relate any facts to shed light upon the circumstances surrounding the occasion of her seeing the purported wife, Clarice, in October

Charles Andrews testified that he knew the appellant and had known him for approximately three years; that he had had occasion to see him in El Paso County during that period; that to the best of his knowledge appellant's residence was in El Paso County; that during the three-year period he saw appellant maybe once or twice a week on occasions, maybe every two weeks and that during such three-year period appellant mentioned to him that he was married. The witness, however, did not recall when appellant first mentioned this to him. Mr. Andrews also related that he visited at the appellant's residence three times; that appellant had introduced him "to a woman that he told me was his wife"; that this took place the first year he knew appellant; that he had known this lady for possibly two years; that she was introduced as Mrs. Castanos"; that appellant introduced the children "Not by name, but as, 'These are my children'" and that he referred to them as his children. The witness further related that on his visits to appellant's home he referred to the lady he had met as Mrs. Castanos, that she responded to this, and that appellant referred to her as his wife; that during this two-year period he never saw her on an occasion other than when he would visit in the home and that the last time he saw her in appellant's home was on his visit there "Along, I believe, in August or September of '61, somewhere along in there." The witness also testified to virtually the same facts as to the dove hunt and picnic as related by his wife in her testimony. He further testified to a meeting at his home between the appellant and Mr. Doppelhauer (shown to be the father of the prosecutrix) and to a conversation wherein appellant was asked by Mr. Doppelhauer "if he was married and his answer was, 'Yes and no'." The witness Andrews testified further to an explanation by appel-

lant that "he had received a Juarez divorce, but had since found it was no good, and he had filed suit for divorce in the United States, and that the divorce should be final by Saturday, or in the very near future." The witness stated that this conversation "must have been around the 1st of December. I mean—Pardon me. It was the 1st of January to the 15th of January, something along there," in 1962. Upon redirect examination, the witness testified that he visited the appellant's home and that he lived at three different places; that the lady he met at appellant's home on three different occasions and at the picnic and in the home of appellant's father and had seen at the preliminary hearing was the same person, the one he knew as Clarice Castanos. When the witness was asked if Clarice Castanos was living with the defendant, he replied "Yes, sir." Further testimony by Mr. Andrews related to a hunting trip when he discussed appellant's marital status with Mr. Doppelhauer, appellant being on the trip but not present at the time of this conversation, and the subsequent meeting of these parties at the Andrews' home after the hunting trip. Mr. Andrews then stated that he received a telephone call from the appellant and that "The first question he asked me was, did I inform Mr. Doppelhauer that he was married" and that appellant said "he had reason to believe that I was the informant * * *." It was at this subsequent meeting that the appellant mentioned the Juarez or Mexican divorce, that he had found that "it was invalid, and that he was getting a divorce here and it should be final Saturday, or in the very near future." The witness was then asked if he had any further knowledge, at the time, of this later meeting, which was the latter part of December or the first part of January, as to whether "the Defendant and Clarice were living as man and wife," and he responded: "I had no knowledge that he was still living with her or was living with her."

The prosecutrix, Jennie Lee Doppelhauer, testified that she first met the appellant in January of 1961 while she was working at a drugstore; that she had lived in El Paso for five years and that she was eighteen years of age; that appellant asked her for a date the first or second time she saw him; that he never mentioned his marital status any time prior to this date nor did he ever say whether or not he had any children; that she dated the appellant "steady" between the period of January, 1961, and May, 1961; that "It come up after May that he was married"; and that she went through a marriage ceremony with appellant in Juarez (Mexico) in May, 1961; that she did not live with him after this marriage; that in July of 1961 she questioned him about his being married; that someone had "called up" and that her conversation with appellant was based upon this telephone call; that appellant told her that what the telephone call was about was not true, but that when she questioned him again on a later date he stated that he was married but that he was divorced in 1959 in Mexico. The witness further testified that she had a child by appellant on June 6, 1962; that she first knew in November, 1961, that she was pregnant; that she went through a second marriage ceremony with appellant in El Paso County, at Anthony; that she went through this second ceremony "To get married in a church"; that the Reverend Brunner officiated at the Anthony Methodist Church and his wife was the witness, the ceremony taking place on January 19, 1962. The witness further testified that appellant told her he had obtained a divorce on January 2, 1962; and that she had not lived with appellant after the Anthony ceremony.

The state introduced into evidence an authenticated copy of a marriage license from Las Cruces, New Mexico, showing that Joe Rodolfo Castanos and Clarice Fortenberry were married July 22, 1957, by Henry G. Diaz, Probate Judge. The state also introduced into evidence the original marriage license issued by the El Paso county clerk showing that a marriage was performed between Joseph Rodolfo Castanos and Jenny Lee Doppelhauer on Jan-

uary 19, 1962, by Rev. Lester J. Brunner, Anthony Methodist Church minister, Anthony, Texas.

Appellant brings forward three formal bills of exception. In view of the qualification given them by the trial court, none of them present anything for review. Were they properly before us, however, we are of the opinion that none of these bills reflect error.

We call attention to the fact that the holding of this court in Hopson v. State, 115 Tex.Cr.R. 260, 30 S.W.2d 311, 70 A.L.R. 1028, was rendered inoperative by the passage of Art. 490a, Vernon's Ann.P.C.

We find the evidence sufficient to sustain the jury's verdict.

Finding no reversible error, the judgment of the trial court is affirmed.