UNITED STATES

v.

**William A. REGAN, 264 35 0298, Corporal (E–4), U. S. Marine Corps.**

NCM 78 1020.

U. S. Navy Court of Military Review.

16 April 1979.

LT Vance J. Bettis, JAGC, USNR, Appellate Defense Counsel.

LT J. G. Van Winkle, JAGC, USNR, Appellate Government Counsel.

Before CEDARBURG, FERRELL and ROOT, JJ.

FERRELL, Judge:

Pursuant to his pleas, appellant was found guilty of two offenses of attempted violation of a lawful general regulation and two specifications of violating a lawful general regulation, in violation of Articles 80 and 92, Uniform Code of Military Justice, 10 U.S.C. §§ 880 and 892. Appellant was sentenced to a bad-conduct discharge, confinement at hard labor for 3 months, forfeiture of $150.00 pay per month for 3 months, and reduction to pay grade E–1. The convening authority, pursuant to a pretrial agreement, approved the sentence but suspended execution of the bad-conduct discharge for 12 months with provision for automatic remission. The supervisory authority remitted part of the confinement and otherwise approved the sentence as approved and partially suspended by the convening authority.

Appellant now assigns two errors to the proceedings below:

## I

THE GOVERNMENT FAILED TO AFFIRMATIVELY ESTABLISH SUBJECT MATTER JURISDICTION OVER RENUMBERED SPECIFICATION 2 of CHARGE II.

## II

APPELLANT WAS DENIED THE EFFECTIVE POST–TRIAL ASSISTANCE OF COUNSEL.

The appellant pleaded guilty and was found guilty of a violation of Article 92, Uniform Code of Military Justice, by knowingly and deliberately having in his possession in his off-base apartment two (2) pieces of C–4 high explosive, two (2) nonelectric blasting caps and one (1) black fuse cord, property of the United States Government. On the charge sheet, renumbered Specification 2 of Charge II contains a preamble in which the pleader asserts jurisdiction over the offense based on six of the factors enumerated in *Relford v. Commandant*, 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971),

to wit: that the crime was committed within U.S. territorial limits and not within an occupied zone of a foreign country; that there is a connection between the accused's military duties and the crime; that there is no civilian court in which the case can be prosecuted; that there was a flouting of military authority; that the offense is a threat to a military installation; and, that the offense is a violation of military property.

Because there was no defense challenge to the sufficiency of the specification to allege military jurisdiction, which factor was compounded by the plea of guilty, the result is an issue of jurisdiction, unlitigated below, requiring this Court to determine for the first time on appeal whether the specification, on its face, affirmatively demonstrates the jurisdictional basis of the offense.

The specification and the military judge's *Care*[1] inquiry could have been more illuminating in regard to subject matter jurisdiction; nevertheless, we believe them adequate to pass the test established in *Relford.*

The United States Court of Military Appeals in *United States v. Moore,* 1 M.J. 448 (1976) stated:

> What *Relford* makes clear is the need for a detailed, thorough analysis of the jurisdictional criteria enunciated to resolve the service-connection issue in all cases tried by court-martial. . . .

In making that detailed and thorough analysis in *Moore,* the Court considered the alleged offenses and their distinctive effect upon military interests. In considering the case *sub judice,* we are convinced it is appropriate for us to consider and give great weight to the distinctive nature of the Government property involved in applying the criteria established in *Relford.* The C–4 high explosives, blasting caps and black fuse cord are properties within the military's distinctive province of weaponry, in which military interests are virtually exclusive of those of the civilian community. A Government pen, typewriter, or wrench may be put to legitimate or illegitimate uses by anyone at any place. No common legitimate use exists, however, for C–4 high explosives outside a military area in conjunction with intended military purposes.

■ We are of the opinion that the appellant's status as a Marine subject to the Navy Regulations, and his alleged wrongful possession of Government property having a distinct interest to the military are factors sufficient to clearly establish subject matter jurisdiction in this case.

■ We reject the second assignment of error. The record reflects that appellant was effectively represented by both detailed and individual counsel, post-trial. Any difficulties experienced during that period were the result of the lack of communication among the appellant and his two counsel, and were not, in any way, the result of improper Governmental intervention.

Accordingly, the findings and sentence as approved on review below are affirmed.

CEDARBURG, Chief Judge (concurring):

I concur that the specification, on its face, unchallenged at trial below, and the providency inquiry establish service connection sufficient to exercise court-martial jurisdiction. The military, entrusted with weapons and materials of awesome destructive power, has an obvious interest and duty to guard against their removal into unauthorized hands. The responsibility and the authority of the military commander for shepherding these powers of destruction is obvious. Unauthorized possession of military explosives, violating the security of the safekeeping responsibilities for inherently dangerous properties, has substantial impact and adverse effect upon morale, discipline, reputation and integrity of a military base, upon its military personnel and upon the military operation and the military mission. Vindication of this peculiarly military responsibility and authority, an objective unlikely to generate complete interest and

1. *United States v. Care,* 18 U.S.C.M.A. 535, 40 C.M.R. 247 (1969).

concern in the civil courts, has little counterpart in nonmilitary criminal law. The military has a distinctly overriding interest in the prosecution of possession, in this case, of military explosives.

ROOT, Judge (dissenting):

I cannot agree with the majority in its disposition of the first assignment of error.

Case law [1] suggests that counsel can challenge the sufficiency of a charge to allege military jurisdiction by a motion to quash demonstrating in what particulars the charge fails to allege facts sufficient to demonstrate "service connection." The failure to do so in this case, as the majority points out, results in an important, but unlitigated issue of jurisdiction being raised for the first time before this Court. The pleader, in a preamble to renumbered Specification 2 of Charge II, asserts six of the factors enumerated in *Relford v. Commandant,*[2] to wit: that the crime was committed within U. S. territorial limits and not within an occupied zone of a foreign country; that there is a connection between the accused's military duties and the crime; that there is no civilian court in which the case can be prosecuted; that there was a flouting of military authority; that the offense is a threat to a military installation; and, that the offense is a violation of military property.[3]

In analyzing the appellant's responses during the *Care*[4] inquiry and applying that information to the jurisdictional factors alleged in the specification, I have great difficulty in following the dazzling footwork of the majority in arriving at the conclusion that subject matter jurisdiction can be found in this particular specification. In fact, I think that only one of the six enumerated factors really exists in this case, to wit: that the offense occurred within U. S.

territorial limits and not within an occupied zone of a foreign country. I see absolutely no connection between appellant's military duties and the offense. In view of the fact that the appellant is not charged with theft of the items alleged, I see only a very slight consideration of flouting of military authority; I see no threat to military installations, and no threat to the integrity of military property.

While it is true that in *United States v. Moore*[5] and later cases, our senior Military Court exhorted us to make a detailed, thorough analysis of the jurisdictional criteria enunciated in resolving the service connection issue in all courts-martial, I believe the majority is placing undue reliance on the finding in *Moore,* which I think is distinguishable from the case *sub judice.* There, the accused devised a scheme to fake his own drowning to avoid further military service. He, along with his wife and another serviceman, conspired to collect a large sum of Government insurance and a death gratuity by means of a fraudulent drowning. Chief Judge Fletcher, speaking for an undivided Court of Military Appeals, held:

> *Perhaps most significant in resolving the service-connection question here is the fact that the accused's military status, and that status alone, enabled Airman Moore to devise and implement his criminal scheme.* Prior to *Relford,* Judge Darden observed in *United States v. Fryman,* 19 U.S.C.M.A. 71, 73, 41 C.M.R. 71, 73 (1969) that *"the positive misuse of . . . [military] status to secure privileges or recognition not accorded others causes the armed forces to have a substantial interest in punishing the abuse."*
> . . .

Factors 1 through 5, 8, and 12 all concern the effect of a crime's commission off base and are matters to be weighed in

1. *United States v. Alef,* 3 M.J. 414, 419 n.18 (C.M.A.1977).

2. 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971).

3. In *O'Callahan v. Parker,* 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969), which is the genesis of the *Relford* factors, this factor is

denominated "the integrity of military property."

4. *United States v. Care,* 18 U.S.C.M.A. 535, 40 C.M.R. 247 (1969).

5. 1 M.J. 448 (1976).

determining "whether the military interest in deterring the offense is distinct from and greater than that of civilian society, and on whether the distinct military interest can be vindicated adequately in civilian courts." *Schlesinger v. Councilman,* 420 U.S. 738, 760, 95 S.Ct. 1300, 1314, 43 L.Ed.2d 591 (1975). (Emphasis supplied).

Reasoning from this point, the majority opines that the distinctive nature of the Government property involved in the case *sub judice,* military explosives, is sufficient reason to find service connection.

Turning to the *Care* inquiry in this case, and keeping in mind that the appellant is neither charged with possession of stolen property nor with stealing explosives from the Government, but only with the possession of explosives in violation of Navy Regulations, I find that the appellant declared to the military judge that he received the explosives "from someone who was leaving for the mainland" who did not want to take the explosives on the airplane (R.27). There is no indication of a conspiracy to possess military property, much less explosives. There is not even any indication that the person from whom the appellant received the explosives was a serviceman. Although, under questioning of the military judge, the appellant admitted that the explosives were the property of the Government, there is no other proof of that fact, except the nature of the explosives themselves. Therefore, we are left with this situation: Explosives, which were the property of the United States Government, were found in the off-base apartment of the appellant. He declares that the explosives were given him by "someone" who was leaving the area. For aught that appears in the record, the explosives were possessed by a civilian and could just as easily have been given to a civilian, but, by chance, were given to this serviceman appellant. There is no indication of any planned use of the explosives; no indication that they were jointly obtained by this appellant and any other person; no indication that they were any threat to any military installation or property. Civilian authorities in Hawaii certainly had an interest in seeing that dangerous explosives were not illegally or improperly possessed by anyone within its territorial limits. Had the explosives been found in the possession of a civilian, not subject to Navy Regulations, existing civilian courts would have exercised jurisdiction.

In short, in my opinion, there has been an abject failure on the part of the Government to establish service connection or subject matter jurisdiction in this case and I would reverse the court's finding of guilty of renumbered Specification 2, Charge II.

I do, however, concur in the disposition of the appellant's second assignment of error.

# UNITED STATES

### v.

**Bruce E. MOLES, 559 13 7648, Lance Corporal (E–3), U. S. Marine Corps.**

### NCM 78 1665.

U. S. Navy Court of Military Review.

Sentence Adjudged 26 July 1978.

Decided 16 April 1979.

