UNITED STATES

v.

**James M. DALY, 385 66 9571, Lance Corporal (E–3), U.S. Marine Corps.**

**NMCM 82 4251.**

U. S. Navy-Marine Corps Court of Military Review.

Sentence Adjudged 18 May 1982.

Decided 25 Jan. 1983.

CDR Matthew J. Wheeler, JAGC, USNR, Appellate Defense Counsel.

LCDR Jeanne Carroll, JAGC, USN, Appellate Defense Counsel.

LT W. David Paxton, JAGC, USNR, Appellate Government Counsel.

Before ABERNATHY, Senior Judge, and BARR and MALONE, JJ.

BARR, Judge:

Appellant was convicted by special court-martial, pursuant to his plea of guilty, of an unauthorized absence from 9 September 1981 until 31 March 1982, in violation of Article 86, Uniform Code of Military Justice, 10 U.S.C. § 886. He was sentenced by the court, sitting as military judge alone, to confinement at hard labor for seventy-five days, forfeiture of $200.00 pay per month for a period of two months, reduction to pay grade E–1, and a bad-conduct discharge. The convening authority approved the sentence, but suspended the punitive discharge without further modification.

During the providence inquiry, *United States v. Care,* 18 U.S.C.M.A. 535, 40 C.M.R. 247 (1969), appellant stated that he left his unit on Sunday, 6 September, rather than 9 September as alleged. The military judge advised appellant that he was not charged with an absence commencing 6 September, and thereafter obtained appellant's admission that, notwithstanding his absence prior to the date alleged, appellant would have been required to report for duty on 9 September, that he was not present for duty on that date, that his absence was without authority, and that his next contact with military authority was on 31 March 1982. Unfortunately, no clarification of appellant's status during the period 6 to 9 September was pursued by the military judge. We are now asked to decide whether the decision in *United States v. Newton,* 11 M.J. 580 (N.C.M.R.1980), which reversed a conviction based on *facially* similar facts, requires that the finding of guilty to the period of absence alleged be set aside.

In one of its earliest decisions, the United States Court of Military Appeals enunciated

the rule that has ever since been the law of unauthorized absence as it concerns the inception date: unauthorized absence is not a continuing offense, but is complete the moment an accused absents himself without authority. *United States v. Emerson,* 1 U.S.C.M.A. 43, 1 C.M.R. 43 (1951). A technical reading of this rule and its application to the facts at hand might seem to compel the conclusion reached in *Newton.* We do not believe the rule to be so absolute. Nor, upon consideration of the different factual situations presented, do we believe the holding of *Newton* to be apposite.

In *United States v. Lynch,* 22 U.S. C.M.A. 457, 47 C.M.R. 498 (1973), the Court of Military Appeals, after defining, and distinguishing between, a continuing offense and one that was instantaneous, discussed the "critical aspects" of the offense of unauthorized absence, and their consequences, which lead to adoption of the "instantaneous offense" theory. The essential elements for a *finding* of guilty to unauthorized absence are *only two:* that a servicemember absented himself and that the absence was without authority. The duration of the absence is, by substantive definition, an essential element *only* as it affects the maximum permissible punishment applicable to the offense. Thus, it is the nature of the offense as defined by the elements essential to support a finding of guilty which compels the application of the "instantaneous offense" theory. This aspect, however, does not establish as sacrosanct the inception date such that it cannot, by plea or evidence, be modified. *See United States v. Harris,* 21 U.S.C.M.A. 590, 45 C.M.R. 364 (1972).

The second "critical aspect" of an unauthorized absence offense that is also "single and uninterrupted" is that it "cannot be fragmented into two or more separate periods, with each part separately punishable." *United States v. Lynch, supra.* This aspect of the "instantaneous offense" rule evidences the dual concerns of protection against escalation of punishment by carving two or more offenses out of what is

in reality but one infraction and, its corollary, protection against successive prosecutions for what is substantially the same offense. If the offense of unauthorized absence were considered "continuous," every day of absence would conceivably be a *new* offense *as well as* an aggravating element of the underlying "single and uninterrupted" offense. We note that in the converse of this aspect lies the rationale for the rule of *United States v. Reeder*, 22 U.S.C. M.A. 11, 46 C.M.R. 11 (1972), that where one offense is charged, but the evidence of the case and/or providence admissions of the accused disclose two *separate* offenses, only the alleged may be the basis for sustaining a conviction. *Reeder* does not prevent an accused from pleading solely to the second period disclosed by the evidence and contained, as to dates, within the averments of the specification. *See United States v. Porter*, 12 M.J. 949 (N.M.C.M.R.1982). It does, however, because of the instantaneous nature of the offense of unauthorized absence, preclude the Government from alleging one inception date and then, faced with an early termination, obtaining a conviction of the charge by relying upon an unalleged, and later, inception date to a *completely different* offense as to which there is no evidence, except its date of termination.

■ The third "critical aspect" of the offense of unauthorized absence concerns the application of the statute of limitations. As an instantaneous offense, the statute begins to run when the offense is completed, that is, its inception date. *United States v. Busbin*, 7 U.S.C.M.A. 661, 23 C.M.R. 125 (1957). If the offense was considered continuous, the power to avoid the protection of the statute of limitations would be complete, for the government could choose *any* date during the period alleged as the inception date and thus bring the allegation, and hence the offense, within the two year period. It was this exact set of circumstances which lead to the decision in *Newton*. In that case, because the period of actual absence commenced on a date barred by the statute, the government chose, and alleged by amendment to the specification, a fictitious inception date as

to which trial was not so barred. The Court did not, in construing the term "instantaneous offense" under the then extant facts, issue a broad pronouncement on the inviolability of an inception date as alleged. Rather, the Court, in reversing the conviction, merely applied the instantaneous offense theory to the facts of the case and thereby enforced the purpose, and the protection incident thereto, for which this third "critical aspect" was fashioned.

■ We believe that where the protections which inure to an accused in consequence of the "instantaneous offense" theory are not abridged, that is, where permitting the alteration of an inception date will not prejudice an accused such as would occur if it would result in an increase in the maximum permissible punishment because of its duration, would escalate the punishment due to fragmentation of one offense into two or more separate offenses, would permit conviction for a wholly separate and distinct (as contrasted with an aggravated) offense, and/or would render meaningless the defenses of double jeopardy and the statute of limitations, in bar of trial, then modifications and/or amendment of an alleged inception date by plea or evidence, as well as a finding based thereon, do not do violence to, nor is either action prohibited by, the concept of "instantaneous offense." The facts of the case *sub judice* disclose no abridgment of any of the "critical aspects" upon which the instantaneous offense theory of unauthorized absence is founded and thus no prejudice to appellant has resulted. In the absence of alterations which result in such prejudice, common sense would dictate that, if an accused can, by modification to the inception date, plead to a lesser period contained within the period alleged, *United States v. Harris, supra,* he can also plead to the period alleged, and its later inception date, where it is lesser in duration than that believed by an accused to be the actual period of absence.

We are reinforced in this conclusion by the following pragmatic observation: to preclude an accused from pleading to, and

disallow a finding of guilty to be predicated upon, a specification which alleges an inception date later than that which the absence may have actually commenced, would lead to the incongruous result of witnessing the government at trial attempting to prove the accused was present at his unit for that period prior to the alleged inception date and the accused presenting evidence that he was absent for that period. The apparent bizarreness which would be manifest in this reversal of roles cannot be within the intendment of the "instantaneous offense" concept as applied to the offense of unauthorized absence. We therefore conclude that appellant's plea of guilty to the offense as alleged was provident.[1] Accordingly, the finding of guilty and the sentence as approved on review below are affirmed.

Judge MALONE concurs.

ABERNATHY, Senior Judge (concurring in the result):

While I agree with everything that Judge Barr has said, and can join in affirming on that basis, I would decide the case on much narrower grounds.

We are dealing here not with a variance between pleading and proof in a contested case, but rather a question of plea providence. In this latter situation, the question to be resolved is whether there is some substantial indication of a direct conflict between the accused's plea and his statements. *United States v. Logan,* 22 U.S.C. M.A. 349, 47 C.M.R. 1 (1973). I would find no such direct conflict for two reasons.

First, the accused told the military judge that he was pleading guilty to an unauthorized absence alleged to have commenced on 9 September, and relative thereto, he could remember having left his command on the 6th and not returning on the 9th. The fact that these dates do not sit astride a weekend seems to have given rise to an inference that appellant could not have been on special liberty at the time, incident to a post-deployment stand-down or for some other similar reason. I do not think such speculation creates the direct conflict envisioned by *Logan, supra.* Second, even if the possibility of such a conflict or inconsistency is perceived, I believe that the words "on or about" 9 September should allow the government three days leeway in dealing with an absence of almost seven months, whether in the context of guilty, or not guilty, pleas. Such a variance is not material when the statute of limitations is not involved. Thus, the holding in *Newton, supra,* is distinguishable, and, therefore, not controlling in the case at bar.

Of course, all of this appellate scrutiny could have been avoided by the military judge, whose inquiry touched upon the matter of this vexatious three-day period but twice failed to come to grips with it.

1. To the extent that the decision of this panel of the Court in *United States v. Prather,* No. 82 2304 (N.M.C.M.R. 30 September 1982) is to the contrary, it is expressly rejected.