UNITED STATES

v.

**Michael H. KYLES, 460 19 6829, Corporal (E–4), U.S. Marine Corps.**

**NMCM 84 3346.**

U.S. Navy-Marine Corps Court of Military Review.

Sentence Adjudged 1 May 1984.

Decided 30 Jan. 1985.

CDR David C. Larson, JAGC, USN, Appellate Defense Counsel.

LT Marva J. Daniel, JAGC, USNR, Appellate Defense Counsel.

LT Douglas R. Folkert, JAGC, USNR, Appellate Government Counsel.

Before GORMLEY, Senior Judge, and MAY and RAPP, JJ.

RAPP, Judge:

The appellant pled guilty to a 19-day unauthorized absence in violation of Article 86, Uniform Code of Military Justice (UCMJ), and to the unlawful use of cocaine, a violation of Article 134, UCMJ, 10 U.S.C. §§ 886, 934. Contrary to his plea, he was found guilty of bigamy, in violation of Article 134, UCMJ, by a court of members. He was sentenced to a bad conduct discharge, confinement for 6 months, forfeiture of $397.00 per month for 6 months, and reduction to pay grade E–1. Appellant has assigned seven errors for our attention. We find merit in none, but will discuss each briefly.

I

THE MILITARY JUDGE ERRED IN DENYING THE DEFENSE MOTION TO DISMISS SPECIFICATION 1 OF

CHARGE II SINCE THE OFFENSE OF BIGAMY IN THIS CASE IS WITHOUT SERVICE CONNECTION. [and]

## VII

THE GOVERNMENT FAILED TO PROVE BEYOND A REASONABLE DOUBT THAT THE MARRIAGE TO SUSAN VOGT KYLES WAS TO THE PREJUDICE OF GOOD ORDER AND DISCIPLINE OR THAT IT WAS SERVICE DISCREDITING.

On 22 October 1982 the appellant was married to Lance Corporal Sharon Kay Kyles, USMC, his legal spouse, who was then on active duty in the Marine Corps and continued in that status through the time of trial. For reasons not relevant to the issue under discussion, the appellant and Lance Corporal Kyles decided after a few months that their union was not desirable and separated. Sharon Kyles eventually was transferred to Okinawa for duty. The appellant consummated a courtship of Susan Gail Vogt by marrying her on 20 August 1983. The testimony of the appellant and Sharon Kyles differs substantially regarding their discussions of divorce and which of the two would be responsible for completing the necessary legal procedures, but the record establishes unequivocally that no divorce was obtained by either. As a result, the appellant's official Marine Corps records continued to show that he was married to Sharon Kyles, rather than Susan Gail Vogt.

■ The offense of bigamy is not susceptible to facile classification regarding service-connection but rather requires close scrutiny of the particular circumstances. *Compare United States v. Hadsell,* 42 C.M.R. 766 (A.C.M.R.1970), *with United States v. Burkhart,* 40 C.M.R. 1009 (A.C. M.R.1969). In general we will use as our framework the criteria set out in *Relford v. Commandant,* 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971).

■ The first matter for determination is whether the offense of bigamy was committed on or off military property.

Some offenses, such as robbery, larceny or assault, can be neatly defined as occurring at a particular time and place. Bigamy, though, is different, commencing at the time the bigamous marriage is carried out and continuing thereafter until the bigamous state is legally terminated. 10 C.J.S. *Bigamy* § 10 (1938). Furthermore, an offense need not be committed solely on base for service-connection to exist, but rather commission of significant portions on base is sufficient. *See United States v. Escobar,* 7 M.J. 197 (C.M.A.1979); *United States v. Crapo,* 18 U.S.C.M.A. 594, 40 C.M.R. 306 (1969). Thus, the off-base location of the marriage ceremony between the appellant and Susan Gail Vogt does not end our inquiry. We must further consider that Susan and the appellant attended social functions with others in his unit where she was introduced as his wife; Susan came on base and used her status as the appellant's apparent spouse to pick up his pay check; Susan received medical services from on base sources at least twice, for which the appellant used their marriage license to gain access; and Susan visited appellant's personnel office in the capacity of his apparent spouse to view his personnel record and seek an identification card. Therefore, the bigamous relationship was repeatedly carried over into the military community.

■ Turning to other *Relford* criteria, we note that military status of both victim and offender, while not alone sufficient to establish service-connection, is an important consideration. *See O'Callahan v. Parker,* 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969); *United States v. Hedlund,* 2 M.J. 11 (C.M.A.1976). Also, where the military service itself is the victim, service-connection has been conceded. *United States v. Moore,* 1 M.J. 448 (C.M.A.1976); *United States v. Regan,* 7 M.J. 600 (N.C.M. R.1979). Sharon Kyles was undoubtedly a victim of the appellant's premature second marriage. She testified at length about the adverse emotional effects she suffered from uncertainty regarding her marital status, culminating in extensive inquiries to

the highest levels of the Marine Corps for clarification. The Marine Corps was likewise victimized by the appellant's offenses. A personnel specialist testified regarding the excessive amounts of time required in counselling the appellant and in attempting to untangle his personnel records regarding his dependency status. The appellant's putative spouse was provided with medical care to which she was not entitled. We also take judicial notice that the confusing marital state would have interfered with proper notification for the appellant's next of kin in case of his serious illness or injury or his death, and that entitlement to casualty assistance and death benefits could have been put in doubt, causing unnecessary delay and hardship.

■ As a result of analyzing these circumstances in the context of the *Relford* criteria we conclude that the balance is tilted toward service-connection, so that the military judge correctly ruled in favor of military jurisdiction. We further conclude that the evidence has established beyond a reasonable doubt that the appellant's bigamy was prejudicial to good order and discipline and was service-discrediting.

## II

## THE MILITARY JUDGE ERRED IN DENYING DEFENSE COUNSEL'S CHALLENGE FOR CAUSE AGAINST MASTER SERGEANT ROUSE.

■ The decision of the military judge to deny the defense challenge for cause against Master Sergeant Rouse will not be overturned in the absence of a clear abuse of discretion. *United States v. Boyd*, 7 M.J. 282 (C.M.A.1979); *United States v. McQueen*, 7 M.J. 281 (C.M.A.1979); *United States v. Dean*, 5 U.S.C.M.A. 44, 17 C.M.R. 44 (1954); *see United States v. Harris*, 13 M.J. 288 (C.M.A.1982). Our review of Master Sergeant Rouse's voir dire as a whole persuades us that he did not possess an "inelastic attitude" toward imposition of a bad conduct discharge, but rather that he would yield to the evidence and the military judge's instructions. *United States v. Dean*, at 49; *see United*

*States v. Cosgrove*, 1 M.J. 199 (C.M.A. 1975). As a senior career Marine, Master Sergeant Rouse voiced an aversion to drug abusers based on their negative effect on readiness. Upon instruction by the military judge regarding the need to distinguish the police duties of a noncommissioned officer from the judicial duties of a court member, however, Master Sergeant Rouse acknowledged his understanding of the difference and his willingness to keep an open mind. Undoubtedly, Master Sergeant Rouse's attitude toward the retention of drug abusers was tough but that did not make him unfit to sit as a court member. Instead, disqualification required a showing of inflexibility. The very words of the record, though, show the contrary. In particular, we refer to the specific question of the military judge:

> ... have you decided that you *have to* give a discharge in this case? (Emphasis added.)

The reply of Master Sergeant Rouse was unequivocal:

> *No*, sir, I haven't decided that. *I will let the case be presented,* but *if that's what it warrants,* I'm not adverse to asking for it, no, sir. (Emphasis added.)

Moreover, even persistent questioning by the trial defense counsel could not shake Master Sergeant Rouse's declaration to be open-minded. Replying to the final question after extensive voir dire he firmly reiterated to the trial defense counsel, "I would have to let the case present itself." These words hardly establish inflexibility. Accordingly, the military judge did not abuse his discretion in denying the appellant's challenge of Master Sergeant Rouse.

## III

## THE MILITARY JUDGE ERRED IN RESTRICTING THE TESTIMONY OF MAJOR GEORGE MARTINEZ.

In arguing for the acceptance of Major Martinez as an expert, the trial defense counsel proffered that the testimony would cover the "generalized knowledge level of persons in the military community concern-

ing divorce and annulment procedures." Also, he asserted that Major Martinez would testify about the "procedures utilized by legal assistance in rectifying divorce and annulment, the mistakes made by members of the Marine Corps community." More specifically the testimony would show

> ... the number of times particular circumstances come up where parties are uncertain of their marital status; of what steps he and his colleagues take in resolving those difficulties; of the procedures for nunc pro tunc determinations and annulments in cases of possibly bigamous relationships; the frequency that those relationships are brought to his attention as a legal assistance officer; and whether or not legal assistance refers such cases to commands for disciplinary action.

The military judge denied the motion, stating:

> That clearly invades the province of the jury or court members in this case. It's simply a matter of common sense rather than one that an expert will testify to.
>
> However, certainly Major Martinez can testify concerning matters that are directly involved in this case, such as what packages are developed when an individual such as Corporal Kyles comes to legal assistance and obtains a package; what must be done with that package in order to file for the divorce; what the proceedings are; those type of matters.
>
> If you wish to bring those out, you may do so, but I'm not going to allow you to bring out what his opinion is of the general knowledge of Marines that he sees, how many people that he sees who are ignorant of their divorce proceedings, and I'm certainly not going to allow you to have any testimony concerning which cases legal assistance refers to the commands for disciplinary action. That's obviously not an issue in this case whatsoever.

The Military Rules of Evidence pertaining to expert testimony are intended to broaden the admissibility of such testimony, but the essential limiting parameter is whether the testimony will assist the trier of fact to understand the evidence or to determine a fact in issue. *United States v. Snipes*, 18 M.J. 172 (C.M.A.1984); MIL. R.EVID. 702–705; Appendix 18, Analysis of Rules 702–705, *Manual for Courts-Martial, 1969 (Rev.)*. Much of the proffered testimony falls into the category of general knowledge (in the words of the military judge—"common sense") rather than the "specialized knowledge" contemplated by MIL.R.EVID. 702.

We also have great difficulty discerning the relevance of much of the proffered testimony. The appellant's defense of mistake of fact was narrowly based on a misunderstanding between the appellant and his legal spouse regarding who would institute divorce proceedings in civilian court, according to the appellant's evidence and his counsel's arguments. The appellant in his brief has failed to articulate, and we cannot see, exactly how Major Martinez' testimony would "make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MIL.R.EVID. 401. Furthermore, the military judge was willing to let Major Martinez testify regarding a significant portion of the matters which the defense sought to present, but the military judge's offer was refused and Major Martinez was not called as a witness. Thus, in testing the military judge's decision for abuse of discretion, we find none.

IV

IT WAS ERROR FOR THE MILITARY JUDGE TO INFORM THE MEMBERS OF APPELLANT'S GUILTY PLEAS TO SPECIFICATION 4, CHARGE I (UNAUTHORIZED ABSENCE) AND SPECIFICATION 2, CHARGE II (USE OF COCAINE), IN LIGHT OF THE FOLLOWING:

(1) THERE IS NO PROVISION MAKING IT MANDATORY THAT MEMBERS BE INFORMED OF APPEL-

LANT'S GUILTY PLEA PRIOR TO FINDINGS ON CONTESTED CHARGES AS OPPOSED TO PRIOR TO SENTENCE:

(2) COURT MEMBERS ARE NO LONGER REQUIRED TO VOTE ON A FINDING OF A CHARGE TO WHICH AN ACCUSED HAS ENTERED A PLEA OF GUILTY;

(3) THERE IS NO USEFUL PURPOSE SERVED BY THE CONTINUATION OF THIS PRACTICE;

(4) THE DEFENSE COUNSEL OBJECTED TO THE MILITARY JUDGE'S INFORMING THE MEMBERS OF APPELLANT'S GUILTY PLEA BECAUSE OF THE PREJUDICIAL EFFECT OF ADMISSION OF DRUG USE; AND

(5) THE BETTER COURSE FOR A TRIAL JUDGE FACED WITH PLEAS OF BOTH GUILTY AND NOT GUILTY WOULD BE TO DELAY INFORMING THE MEMBERS OF THE GUILTY PLEA AND FINDING UNTIL THE SENTENCING PORTION WHEN SUCH KNOWLEDGE IS NECESSARY TO PERFORM THE SENTENCING FUNCTION. *SEE UNITED STATES v. NIXON*, 15 M.J. 1028, 1030 (A.C.M.R.1983).

 We find that no error occurred when the military judge at the outset of the contested portion of the trial informed the members of the appellant's guilty pleas. The dissimilarity of these two offenses from the bigamy charge contradicts any suggestion that the court members were improperly influenced. *See United States v. Nixon*, 15 M.J. 1028 (A.C.M.R. 1983). We are in agreement with *United States v. Fowler*, No. 84 2269 (N.M.C.M.R. 13 December 1984), decided by another panel of this Court, that the military judge's procedure was both consistent with traditional and historical military practice and supported by the *Manual for Courts-Martial, 1969 (Rev.)*.

## V

THE TRIAL COUNSEL NEVER CAUSED A COPY OF THE CHARGES TO FORMALLY BE SERVED ON AP-PELLANT AND THE MILITARY JUDGE FAILED TO GET APPELLANT'S EXPRESS CONSENT TO BE TRIED WITHIN THE WAITING PERIOD. ARTICLE 35, UCMJ; *UNITED STATES v. OLIPHANT*, 50 C.M.R. 29 (N.C.M.R.1974).

 The appellant accurately points out that the record nowhere indicates he was advised of his rights under Article 35, UCMJ, 10 U.S.C. § 835, or formally served with the charges. The record, however, also shows that appellant never asked to delay the proceedings or otherwise indicated lack of readiness or uncertainty about the charges against him. Instead, the record unequivocally establishes the contrary. During the first session of the trial a motion for dismissal of the bigamy offense was extensively litigated, including testimony by the appellant, and the trial defense counsel specifically waived a reading of the charges without protest by the appellant. At the second session of the trial (ten days after the first session), the military judge fully explained the elements of the other two offenses, to which the accused was pleading guilty, and questioned the appellant at length about those offenses during the providency inquiry. Before accepting the appellant's guilty pleas, the military judge specifically asked the appellant if he had "enough time and opportunity" to discuss his case with his counsel, and the appellant replied in the affirmative. Moreover, the trial occupied three days over an eleven-day period, consuming 338 pages of verbatim transcript, without a hint that the appellant was not informed or ready. Although "failure to allow an accused additional time where the statutory waiting period had not expired and the accused *specifically requests additional time*," could be prejudicial error, *United States v. Oliphant*, 50 C.M.R. 29 (N.C.M.R.1974), such circumstances are not present in this case. Instead, any error of the military judge in failing to advise the appellant of his rights under Article 35, UCMJ, and to ascertain the appellant's desires thereunder is, in our opinion, nonprej-

udicial. *United States v. Garcia,* 10 M.J. 631 (A.C.M.R.1980).

## VI

A SENTENCE WHICH INCLUDES AN UNSUSPENDED BAD CONDUCT DISCHARGE IS INAPPROPRIATELY SEVERE.

 A bad conduct discharge is warranted for a noncommissioned officer who uses cocaine and enters into a bigamous marital relationship.

Accordingly, the findings and sentence, as approved on review below, are affirmed.

Chief Judge GORMLEY and Judge MAY concur.