UNITED STATES, Appellee,

v.

Specialist Four Roger A. JONES, 246–96–2946, United States Army, Appellant.

ACMR 8701537.

U.S. Army Court of Military Review.

30 Aug. 1988.

For Appellant: Lieutenant Colonel Joel D. Miller, JAGC, Major Stewart C. Hudson, JAGC, Captain Mary C. Cantrell, JAGC (on brief).

For Appellee: Colonel Norman G. Cooper, JAGC, Lieutenant Colonel Gary F. Roberson, JAGC, Captain Martin D. Carpenter, JAGC, Captain Marcus A. Brinks, JAGC (on brief).

Before ADAMKEWICZ, WERNER and SMITH Appellate Military Judges.

OPINION OF THE COURT

ADAMKEWICZ, Senior Judge:

On 1 July 1987, appellant was tried by a military judge sitting as a special court-martial, and contrary to his pleas, convicted of larceny (27 specifications) and absence

without leave (AWOL) in violation of Article 121 and 86, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. §§ 921 and 886 (1982). The convening authority approved the sentence to a bad-conduct discharge and reduction to E-1. Before this court, appellant alleges several errors.

I

Appellant contends that the military judge incorrectly applied the statute of limitations to the AWOL offense and improperly amended the inception date of the AWOL to fall within the statute of limitations period.[1] We agree.

The record reflects that the appellant, who had recently returned with his family from the Federal Republic of Germany to the United States, was attached to the 19th Replacement Detachment, Fort Bragg, North Carolina. He applied for a compassionate reassignment and then went home on leave to Elizabeth City, North Carolina. When his reassignment request was denied, he returned to Fort Bragg and applied for a hardship discharge. Specialist Four (SP4) Urbine of the Special Actions Branch, 18th Airborne Corps, advised appellant that the request would be favorably considered and approval of the discharge could take from two weeks to over one year. Notice of discharge action would come from the 19th Replacement Detachment or a probable cessation of paychecks. Specialist Urbine received permission from the 19th Replacement Detachment to send the appellant home to settle his family. Appellant returned to Elizabeth City, North Carolina to await his discharge without obtaining further authorization for leave. Appellant continued to receive bimonthly military paychecks totalling nearly $25,-000.00 from June 1984 through July 1986. In September 1986, he left home and went to work in Pennsylvania until his apprehension in January 1987. During this period the appellant did not attempt to ascertain his status or the status of his discharge. The receipt of the military paychecks forms the basis of the larceny specifications.

Appellant was brought to trial on charges alleging 51 specifications of larceny from 15 June 1984 to 31 July 1986 and desertion from 20 June 1984 until his apprehension on 28 January 1987. The sworn charges were received by the officer exercising summary court-martial jurisdiction over the appellant on 6 April 1987. Defense counsel moved for a finding of not guilty to the lesser included offense of AWOL based on the two year statute of limitations which was in effect at the inception of appellant's absence.[2] See Article 43(c), UCMJ, 10 U.S.C. § 843(c) (1982) ("[A] person charged with an offense is not liable to be tried by court-martial ... if the offense was committed more than two years before the receipt of sworn charges and specifications by an officer exercising summary court-martial jurisdiction over the command."). Trial counsel responded that recent legislation had raised the statute of limitations period to five years. See generally National Defense Authorization Act for Fiscal Year 1987, Pub.L. No. 99-661, § 805(c), 100 Stat. 3816, 3908 (1986) (amending Article 43, UCMJ, 10 U.S.C. § 843 (1982)); see also Article 43(b)(1), UCMJ, 10 U.S.C. § 843(b)(1) (Supp. IV 1986) (the statute of limitations precludes court-martial for non-capital offenses committed more than five years before the charges were received by the summary court-martial officer); Article 43(c), UCMJ, 10 U.S.C. § 843(c) (Supp. IV 1986) ("Periods in which the accused is absent without authority or fleeing from justice shall be excluded in computing the period of limitation prescribed in this section (article).").[3] The

1. Appellant also alleges that the military judge erred by admitting two forms, DA Form 4187, which were used by the government to establish the date of appellant's absence and the date of his return to military control. As a result of our disposition of this case, we do not address the admission of these documents.

2. The desertion and larceny charges carried a three-year statutory limitation. See Article 43(b), UCMJ, 10 U.S.C. § 843(b) (1982).

3. The amendments to Article 43 conform the statute of limitations in the UCMJ to the civilian counterpart provisions of Chapter 213 of title 18, United States Code, by replacing the two-year and three-year limitations with a five-year

military judge held that the new five year statute of limitations applied and that the lesser included offense of AWOL was viable. The military judge subsequently found appellant guilty of 27 of the 51 specifications of larceny committed on and after 30 June 1985 and of the lesser included offense of AWOL with a beginning date of 20 June 1985 in place of 20 June 1984.

■ Under military law, absence without leave is not a continuing offense; it is committed the instant the absence commences. *United States v. Jackson*, 20 M.J. 83, 84 (C.M.A.1985); *United States v. Francis*, 15 M.J. 424, 427 (C.M.A.1983); *United States v. Emerson*, 1 C.M.R. 43 (C.M.A.1951). The duration of the absence is only a factor in aggravation of the punishment. *United States v. Irving*, 2 M.J. 967, 969 (A.C.M.R.1976), *petition denied*, 2 M.J. 197 (C.M.A.1977). *See also United States v. Daly*, 15 M.J. 739 (N.M.C.M.R. 1983) *petition denied*, 16 M.J. 154 (C.M.A. 1983). A single, uninterrupted absence "cannot be fragmented into two or more separate periods, with each part separately punishable." *Id.* at 740 (quoting *United States v. Lynch*, 47 C.M.R. 498, 501 (C.M.A.1973). The statute of limitations begins to run from the inception date of the unauthorized absence. *United States v. Francis*, 15 M.J. at 427. Although the inception date may be changed to a date later than that alleged, *United States v. Harris*, 45 C.M.R. 364 (C.M.A.1972), it may not be altered in such a way as to render meaningless the statute of limitations. *United States v. Daly*, 15 M.J. at 741. Otherwise, the government could choose a date within the statute of limitations as the alleged inception date for tactical purposes to avoid the prohibition against prosecuting an accused for an offense which occurred outside the statutory limit.

■ In this case, if the military judge had found appellant guilty of desertion, there would not have been a violation of the statute of limitations. Article 43(b), UCMJ, 10 U.S.C. § 843(b) (1982), in effect

at the start of the absence, provided that desertion in time of peace carried a three-year statute of limitations. However, the military judge found appellant guilty of the lesser included offense of absence without authority, a violation of Article 86, which at the time of the offense had a two-year statute of limitations. In addition, the military judge altered the inception date of the absence to a date (one year later) which would not be barred by the two-year statute of limitations. The government argues that the military judge apparently found that appellant had authorization to remain away from the unit for one year while his discharge was processed. The government supports this proposition with the fact that the military judge found appellant not guilty of the specifications of larceny for that same time period. However, the defense counsel did not request special findings and the military judge did not specify the basis for his findings on the record. To adopt the government's position in order to preclude application of the two-year statute of limitations would be mere speculation. At trial, the government alleged that appellant's unauthorized absence began on 20 June 1984 and presented documentation to support that allegation. To allow the military judge to alter the inception date of the absence to within two years of receipt of the charges by the summary court-martial convening authority so as to defeat the running of the statutory period would emasculate the statute's salutary legislative policy.

We recognize that a prosecution is not barred by a mere lapse of time and that the statute of limitations in the Uniform Code is a matter of congressional grace and discretion. However, to interpret the new statutory period as reviving the AWOL offense which was barred prior to the effective date of the enlargement would raise serious constitutional concerns by affecting a substantial right as opposed to a mere change in procedural rules. *Cf. United States v. Brooks*, 17 M.J. 584 (A.C.M.R.

---

limitation and by tolling the running of the limitation during any period of unauthorized absence or flight from justice. *See* H.R.Conf.

Rep. No. 1001, 99th Cong., 2d Sess. 493 (1986) *reprinted in* 1986 U.S. Code Cong. & Admin. News 6529, 6552.

1983), *petition denied,* 18 M.J. 109 (C.M.A. 1984) (no *ex post facto* violation where procedural change enacted after crime committed). We prefer to answer the issue raised on other than constitutional grounds.

By the clear and plain language in the Act, the five year statute of limitations on all non-capital offenses in the revised Article 43, applies to an offense committed on or after 14 November 1986. National Defense Authorization Act for Fiscal Year, 1987, Pub.L. No. 99–661, § 805(c), 100 Stat. 3816, 3908 (1986). Appellant's unauthorized absence occurred on or about 20 June 1984, which is two years prior to the effective date of the five-year statute of limitations. Therefore, the military judge was incorrect in applying the statutory limit which was effective subsequent to the commission of the AWOL offense and in altering the inception date of the absence so that prosecution for that offense would not be barred by the two-year statute of limitations. We hold that the statute of limitations had expired for the AWOL offense before charges were received by the summary court-martial authority and that the amendments to Article 43 extending jeopardy for at least five years did not affect the proceedings.

## II

■ Appellant also contends that the evidence was insufficient to support the conviction for larceny of government funds. Appellant argues that the Army knew where he was and consented not only to his presence there but also to his receipt of the paychecks since the paychecks were sent to his home of record, and that appellant honestly believed, albeit mistakenly, that he was entitled to the paychecks.

The evidence of record shows that for 26 months after appellant returned home to await a hardship discharge, he received a military paycheck bimonthly. During this period, appellant was not performing any military duties, but was living with his parents about 150 miles away from Fort Bragg and was working on his father's farm. At the time he went home, appellant had served in the U.S. Army for almost four years and he was aware of leave procedures and had been reminded of the dangers of AWOL. Although appellant had been told that approval of his discharge may take from two weeks to a year, he never inquired about the status of his discharge, even after one year had passed.

We accept the proposition that felonious intent would be lacking if the appellant acquired the paychecks in good faith, honestly believing he had a right to keep the funds. Here, however, the U.S. Army mailed the checks to the appellant by mistake and the appellant, not in good faith but with knowledge of the obvious error and with intent to keep the proceeds, accepted and cashed the paychecks. Thus, the intent to steal was established.

Appellant was charged with larceny of government funds on the basis of his receipt of the military paycheck for the entire 26–month period. The military judge found appellant guilty of larceny of the funds for only the last year. Accepting the correctness of this finding, even if the appellant initially had innocently received the paychecks believing in his own mind that he had a right to them, after the first year had passed, appellant could not have honestly believed that he was entitled to receive his military pay while not performing military duties. Appellant's self-serving testimony to the contrary simply is not credible. He made no attempt or effort to ascertain his status during this period. Appellant remained home for his own convenience. He stood silent while collecting his unearned pay and allowances. Once the government paychecks stopped, the appellant did not inquire as to his discharge certificate. Instead, he left North Carolina to work in Pennsylvania where he was eventually apprehended. We hold that the evidence is sufficient to support the findings of guilty to the larceny offenses and that appellant did not have an honest but mistaken belief that he was entitled to military pay. *See United States v. Greenfeather,* 32 C.M.R. 151 (C.M.A.1962); M.C.M., 1984, Rule for Courts–Martial 916(j).

## III

The findings of guilty of Charge II and its specification are set aside and Charge II and its specification are dismissed. The remaining findings of guilty are affirmed. We are convinced that the sentence as approved by the convening authority is no greater that would have been adjudged by the court-martial. *United States v. Sales*, 22 M.J. 305 (C.M.A.1986). Reassessing the sentence on the basis of the error noted and the entire record, including the issues personally asserted by appellant, the sentence is affirmed.

Judge WERNER and Judge SMITH concur.