UNITED STATES

v.

**Donald R. LEE, 348 58 8565, Quartermaster First Class (E–6), U.S. Navy.**

**NMCM 90 1175.**

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 25 Oct. 1989.

Decided 26 Feb. 1991.

LT Ruth M. Medeiros, JAGC, USNR, Appellate Defense Counsel.

LCDR J. Richard Chema, JAGC, USN, Appellate Government Counsel.

Before MITCHELL, Senior Judge, and FREYER and HOLDER, JJ.

MITCHELL, Senior Judge:

Appellant was convicted at a members general court-martial, *inter alia*, of signing a false official housing application on 8 September of 1986 (Charge I, Specification 1), bigamy (marriage to Sharon Walker) (Charge IV, Specification 1) and forgery of divorce documents pertaining to his immediately previous marriage (Charge III, Specification 1). He contested his guilt of these counts and entered pleas of guilty to other offenses not here pertinent. Before this court in the normal course of review the appellant alleges that the statute of limitations barred trial of the false official statement and bigamy offenses and that the Government did not prove the forgery counts beyond a reasonable doubt. We hold that the statute of limitations bars prosecution of the 8 September 1986 false statement and the 29 April 1986 bigamy offenses and that the evidence is legally insufficient to prove forgery.

On 29 April 1986, appellant, already having a lawful wife, married Sharon Walker. On 22 December 1988, a summary court-martial convening authority formally received the sworn charges. The applicable statute of limitations at the time the offense was committed was two years. Article 43(c), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 843 (1982). At the time of trial it was five years. Article 43(c), UCMJ.

■ The change to Article 43, UCMJ, lengthening the statute of limitations in non-capital cases to five years, became effective 14 November 1986. National Defense Authorization Act for Fiscal Year, 1987, Pub.L. No. 99–661, § 805(c), 100 Stat. 3816, 3908, (1986) (amending Article 43, UCMJ, 10 U.S.C. § 843 (1982)). This

amendment did not obviously or necessarily make an innocent act criminal, increase punishment, nor alter the rules of evidence to require less proof and did not deprive the accused of some protection or defense previously available. Consequently, as a matter of Constitutional law, a timely prosecution could have been undertaken and appellant would not then have had the benefit of a statute of limitations bar. The statute of limitations change is not an *ex post facto* law simply because an offense was committed before the amendment. *Clements v. United States*, 266 F.2d 397 (9th Cir.1959), *cert. denied*, 359 U.S. 985, 79 S.Ct. 943, 3 L.Ed.2d 934 (1959); *Falter v. United States*, 23 F.2d 420 (2nd Cir. 1928), *cert. denied*, 277 U.S. 590, 48 S.Ct. 528, 72 L.Ed. 1003. *See also Beazell v. Ohio*, 269 U.S. 167, 46 S.Ct. 68, 70 L.Ed. 216 (1925); *Kring v. Missouri*, 107 U.S. 221, 2 S.Ct. 443, 27 L.Ed. 506 (1883). *See generally* Annot., 53 L.Ed.2d 1146 (1978).

By the express terms of the Article 43 amendment, however, the new limitation applied only to offenses committed on or after 14 November 1986. Unlike the implementing provisions at issue in *Clements* that gave extended life to civilian federal non-capital crimes under 18 U.S.C. § 3282, the Article 43 amendment did not apply to offenses committed prior to its effective date. The false statement and bigamy offenses at bar were committed prior to 14 November 1986. They were unaffected by the new life span of such prosecutions. *Cf. United States v. Jones*, 26 M.J. 1009 (A.C. M.R.1988). The earlier two-year limitation continued to apply to them.

■ While the Government concedes that the false statement offense, Charge 1, Specification 1, is subject to the statute of limitations bar, it argues that bigamy is a continuing offense and is therefore not touched by the limitation. The argument is based on a perceived public policy to control bigamous relationships, and on the cited cases of *United States v. Kyles*, 20 M.J. 571 (N.M.C.M.R.1985) and *United States v. Jones*, No. 86 1241 (N.M.C.M.R. 28 July 1986), and the discussion in 10 Am.Jur.2d

(1063), *Bigamy*, § 27, that are claimed to hold bigamy to be a continuing offense.

The continuing offense doctrine is a limited one because in seeking to extend the life of a limitation it collides with the purposes of statutes of limitation. The major purposes are to limit the exposure to criminal prosecution to a period certain following commission of a prohibited act, to protect persons from having to defend themselves against charges when the basic facts have become obscured by passage of time, to minimize exposure to punishment for acts committed in the far-distant past, and to encourage timely investigation of offenses and prosecution of offenders. *Toussie v. United States*, 90 S.Ct. 858, 397 U.S. 112, 25 L.Ed.2d 156 (1970).

■ Several propositions flow from these purposes. Limitations on criminal actions are liberally interpreted in favor of repose. *United States v. Habig*, 390 U.S. 222, 227, 88 S.Ct. 926, 929, 19 L.Ed.2d 1055, 1059 (1968); *United States v. Scharton*, 285 U.S. 518, 52 S.Ct. 416, 76 L.Ed. 917 (1932). Statutes of limitations begin to run when the crime is complete. *Pendergast v. United States*, 317 U.S. 412, 418, 63 S.Ct. 268, 271, 87 L.Ed. 368, 373 (1943). Since limitations are matters of legislative decision, it follows that the legislature should speak in language that is clear and definite about their intent. Congress, for example, has mandated that the federal statute of limitations not be extended except as expressly provided by law. 18 U.S.C. § 3282.

■ These propositions reflect the tension between the continuing offense doctrine and the purposes of the statute of limitations. These principles do not mean that an offense should never be construed as continuing. We do not reach such a conclusion, however, unless the explicit statutory language or the nature of the crime compels that result or the nature of the offense is such that a crime must surely have been intended to be treated as a continuing offense. *Toussie*.

Leading up to *Toussie*, most lower federal courts prior to that time had held that failing to register under the various military draft acts was a continuing offense

for statute of limitations purposes in the face of an authorized implementing regulation that imposed a continuing duty to register. *E.g., Fogel v. United States,* 162 F.2d 54 (CA 5th Cir.), *cert. denied,* 332 U.S. 791, 68 S.Ct. 99, 92 L.Ed. 373 (1947). Nonetheless, Justice Black, writing for the court in *Toussie,* said that Congressional silence on the question when it enacted the Selective Service Act of 1948, 62 Stat. 604, weighed in favor of the conclusion that the failure to register was not intended to be a continuing offense. *Toussie,* 397 U.S. at 121, 90 S.Ct. at 863. We conclude that continuing offenses are not to be too readily found. *Toussie,* 397 U.S. at 117, 90 S.Ct. at 861, 25 L.Ed.2d at 1.

■ Bigamy is an offense of ecclesiastical origin and more recently a creature of statute. Bigamy is the act of marrying while the lawful spouse by a former marriage is still alive and the former marriage is still in force. *See* 10 Am.Jur.2d (1063) *Bigamy* § 1. It is committed when the second marriage ceremony is completed. *New York v. Hess,* 286 A.D. 617, 146 N.Y. S.2d 210, 211 (1955); *Green v. Indiana,* 232 Ind. 596, 115 N.E.2d 211 (1955); *Hopson v. State,* 115 Tex.Crim. 260, 30 S.W.2d 311 (1930); *Allen v. State,* 17 Ga.App. 431, 87 S.E. 681 (1916); *Scoggins v. State,* 32 Ark 205 (1877); *Beggs v. State,* 55 Ala 108 (1876); *Gise v. Commonwealth,* 81 Pa 428 (1876). The bigamy statutes in many jurisdictions have expanded to also prohibit bigamous cohabitation, in which case either the marriage or the cohabitation may support prosecution. Such treatment supports the conclusion that bigamy generally contemplates a marriage ceremony rather than a continuing relationship.

The UCMJ does not explicitly proscribe bigamy. Military prosecutions for this offense have rested on the general article, UCMJ, Art. 134 (service discrediting/good order and discipline inhibiting conduct). *E.g., United States v. Pruitt,* 17 U.S.C. M.A. 438, 38 C.M.R. 236 (1968). The military offense of bigamy discussed in the Manual for Courts–Martial (MCM), United States, 1984, describes bigamy as the contracting of another marriage by one who already has a living spouse in circumstances that prejudice good order and discipline or are service discrediting. Para. 65, Part IV, MCM, 1984, (restating the material in earlier MCM, 1951, forms section); *United States v. Patrick,* 2 U.S.C.M.A. 189, 7 C.M.R. 65 (1953). *See also* AR 27–9, Military Judges' Bench Book, para. 3–130. It is committed when the marriage ceremony is completed. *Patrick,* 2 U.S.C.M.A. at 91, 7 C.M.R. at 67.

The MCM does not describe bigamy as an offense incorporating bigamous cohabitation. The current provisions trace earlier naval law that defined bigamy in terms of a second marriage ceremony. *E.g., Naval Courts and Boards,* 1937, paragraph 127. *See also* General Court–Martial Order 14 of 1879, United States Army (bigamy is act of marrying while having a lawful living spouse). We conclude that the MCM plainly describes bigamy as a definite act occurring at a specific and identifiable place. It is complete when the prohibited marriage ceremony is done. *Patrick.*

The Government further argues that since wrongful cohabitation (open and public living together as husband and wife, holding out as same, while not lawfully married to each other) is an offense under Article 134, UCMJ, the offense of bigamy is a continuing offense because the law prohibits such cohabitation, citing 10 Am. Jur.2d (1063) *Bigamy* § 27 and *United States v. Bishop,* 35 C.M.R. 606, 607 (A.B. R.1965).

The Am.Jur. section cited by the Government states the proposition that, where cohabitation following a bigamous marriage is made a crime, the statute of limitations does not begin to run until the cohabitation ceases. Since cohabitation is not incorporated within the term *bigamy* or its allegation word *marry,* and bigamous cohabitation is not factually alleged in Specification 1 of Charge I, we find no authority for application of the cited principle to the Government's argument. The cases cited in 10 Am.Jur.2d involve bigamy statutes where bigamous cohabitation is specifically prohibited in the statute and cohabitation has been specifically charged in the plead-

ings. *E.g., Commonwealth v. Ross,* 248 Mass 15, 142 N.E. 791 (1924). The reference does not support the Government position.

The Government argument, moreover, implicitly states that the existence of a different chargeable offense that is not in fact charged serves in effect to toll the statute of limitations on an offense charged. The argument also implicitly states that alleging one offense under the general article alleges all offenses under that article. Both statements have no recognizable legal authority. Rather, the long existence of wrongful cohabitation as an offense under Article 134 reinforces our conclusion that in military law bigamous cohabitation and bigamy are separately treated.

*United States v. Bishop* does not stand for the cited proposition. It merely holds that bigamy committed more than two years before tolling of a two-year statute of limitations is subject to the plea in bar. *See, Bishop,* 35 C.M.R. at 607. We agree with that conclusion.

The Government authorities of *United States v. Kyles* and *United States v. Jones,* as well as *United States v. Griffin,* 21 M.J. 501 (A.F.C.M.R.1985) and the Court of Military Review opinion in *United States v. Solorio,* 21 M.J. 512 (C.G.C.M.R.1985), which favorably cite *Kyles,* deal with the circumstances establishing service connection in sorting out court-martial jurisdiction under the defunct case of *O'Callahan v. Parker,* 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969). In *Kyles* and *Jones,* this court reasoned that the continuing nature of on-post bigamous marital activity brought about by an off-post bigamous marriage was a military disciplinary interest sufficient for court-martial jurisdiction over the bigamous marriage. Those cases did not hold that bigamy was a continuing offense for statute of limitations purposes. They must be limited to their appropriate context.

■ We hold that, in military law, the word *bigamy* and its allegation word "marry" contemplate an instantaneous marriage event. They are not words of art that plainly incorporate a continuing concept. MCM, 1984, Part IV, paragraph 65; *Patrick. Cf. United States v. Bishop.* The offense is complete when the second marriage ceremony is completed without regard to the life of the relationship. *Patrick.* A continuing offense was not alleged in this case.

We hold that, under the allegations contained in the pleadings of this case, the bigamy offense alleged in Specification 1 of Charge I is not a continuing offense and is subject to the statute of limitations bar, unless there has been waiver.

■ A military judge who is confronted with an apparent statute of limitations problem has the duty to ensure that the accused was aware of its potential application and to secure either its assertion or a knowing and intelligent waiver of the issue. R.C.M. 907(b)(2)(B); *United States v. Rodgers,* 8 U.S.C.M.A. 226, 24 C.M.R. 36 (1957). Waiver of an error in this regard will not be applied unless the record shows that the accused was aware of the right to plead in bar the statute of limitations and that he did not do so. *United States v. Salter,* 20 M.J. 116, 117 (C.M.A.1985), citing *United States v. Arsneault,* 6 M.J. 182 (C.M.A.1979). The matter of statute of limitations did not arise at trial. In this case, there is no suggestion in the record that Quartermaster Lee was aware of the bar. On these facts we hold that there was no waiver of the statute of limitations plea in bar. *Rodgers.*

■ Appellant was also convicted, contrary to his pleas, of forgery of divorce documents (UCMJ, Art. 123). He alleges that, while the Government proved that the signatures of Clementine Lee (wife) and Samuel Spital (lawyer) were forgeries and the named judge and attorney were people not admitted to law practice anywhere in the jurisdiction, the Government did not prove beyond a reasonable doubt that appellant forged the documents.

We pass the signature argument. The offense of forgery is committed when an accused with intent to defraud falsely makes any signature on any document that

would, if genuine, apparently impose a legal liability on another or change his legal right or liability to his prejudice. Article 123, UCMJ; para. 48, MCM, 1984, Part IV. The intent to defraud is an intent to obtain through a misrepresentation an article or thing of value and to either permanently or temporarily apply it to the accused's own or another's use and benefit. Para. 49(c)(14), MCM, 1984, Part IV (incorporated by reference into para. 48(c)(5)). "Fraud" is distinguished from "deceit" by the commercial character of the fraud concept. "Deceit" is to mislead, cheat or trick by misrepresentation for the purpose of gaining an advantage or bringing about a disadvantage. *See* para. 49(c)(15), *MCM*, 1984, Part IV.

In the light most favorable to the United States, the evidence of record establishes that, in September 1979, appellant married Clementine Lee. They resided in San Diego from 1979 until 1984 when Clementine departed for the windy city of Chicago, Illinois. While divorce action was apparently contemplated by the appellant, he did not formally follow through on it beyond obtaining some filing forms.

In April of 1986, appellant married Sharon with benefit of clergy but without benefit of divorce from Clementine. Sharon resided with appellant in San Diego from 1986 until November 1987, the last seven months in Navy housing. While "married" to Sharon and Clementine, the redoubtable squire courted and contracted marriage with Belinda. She, aware that appellant had been married, asked for proof that appellant was an eligible gentleman. A week after this request, she received in the mail from appellant a package of the false copies of court papers supposedly documenting a divorce from Clementine Lee. Being convinced that appellant was divorced, Belinda and appellant tied the ever-tangling knot a month later.

■ The mere making of a false signature on a document does not a forgery make. Article 123, UCMJ, (1, 2); para. 48, MCM, 1984, Part IV; *United States v. Thomas*, 25 M.J. 396 (C.M.A.1988). The prosecution evidence proves that the false documents were copies and not original documents. Furthermore, the evidence clearly shows that the only purpose served by the false copies was to convince the beloved Belinda that the appellant was marriageable. Appellant was not engaged in the first step of a process of obtaining anything of value. *See United States v. Schwarz*, 12 M.J. 650 (A.C.M.R.1981), *aff'd*, 15 M.J. 109 (C.M.A.1983). Absent apparent legal efficacy of the documents, the conviction cannot stand.

We set aside the findings of guilty of and dismiss Charge I, Specification 1 (making false housing application), and Charge IV, Specification 1 (bigamy), as barred by the statute of limitations. We set aside the findings of guilty of and dismiss Charge III and Specification 1 thereof (forgery of divorce documents) for want of evidence.

The appellant, an E–6 with more than 13 years of creditable service, stands convicted of remaining offenses of 2 counts of making a false official document, wrongful appropriation of government housing, bigamy (Belinda), and more than 7 months desertion. He was sentenced to a bad-conduct discharge, three years confinement and reduction to pay grade E–1. We can fairly assess the impact of our dismissal actions on the sentence, applying the principles of *United States v. Sales*, 22 M.J. 305 (C.M.A.1986). We affirm only so much of the sentence as provides for a bad-conduct discharge, 18 months confinement and reduction to pay grade E–1.

Judge FREYER and Judge HOLDER concur.