UNITED STATES, Appellee

v.

Matthew C. KUEMMERLE, Aviation Boatswain's Mate Third Class
U.S. Navy, Appellant

No. 08-0448

Crim. App. No. 200700899

United States Court of Appeals for the Armed Forces

Argued November 18, 2008

Decided January 8, 2009

BAKER, J., delivered the opinion of the Court, in which EFFRON, C.J., and ERDMANN and RYAN, JJ., joined. STUCKY, J., filed a separate dissenting opinion.

Counsel

For Appellant: Lieutenant Gregory W. Manz, JAGC, USN (argued).

For Appellee: Lieutenant Duke J. Kim, JAGC, USN (argued); Brian K. Keller, Esq. (on brief); Commander Paul C. LeBlanc, JAGC, USN, Lieutenant Derek D. Butler, JAGC, USN, and Lieutenant Timothy H. Delgado, JAGC, USN.


Military Judge: R. C. Klant

THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.

United States v. Kuemmerle, No. 08-0448/NA

Judge BAKER delivered the opinion of the Court.

A military judge sitting as a general court-martial convicted Appellant, pursuant to his pleas, of one specification of carnal knowledge in violation of Article 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920 (2000); one specification of receiving child pornography in violation of Article 134, UCMJ, 10 U.S.C. § 934 (2000); and one specification of distributing child pornography in violation of 18 U.S.C. § 2252A(a)(2)(A) (2000), as incorporated into the UCMJ under Article 134, clause 3, UCMJ. The adjudged and approved sentence included a dishonorable discharge, confinement for seven years, and reduction to E-1. The convening authority suspended confinement in excess of forty-eight months for a period of six years from the date of the convening authority's action in accordance with the pretrial agreement. The United States Navy-Marine Corps Court of Criminal Appeals affirmed. United States v. Kuemmerle, No. NMCCA 200700899 (N-M. Ct. Crim. App. Jan. 21, 2008). We granted review of the following issue:

> WHETHER THE COURT-MARTIAL HAD JURISDICTION OVER THE
> OFFENSE OF DISTRIBUTING AN IMAGE OF CHILD PORNOGRAPHY
> WHERE APPELLANT POSTED THE IMAGE ON THE INTERNET PRIOR
> TO ENTERING ACTIVE DUTY AND HE TOOK NO FURTHER STEPS
> TO DISTRIBUTE THE IMAGE AFTER IT WAS INITIALLY POSTED.

We hold that the court-martial had jurisdiction over the offense charged and affirm.

BACKGROUND

Appellant enlisted in the United States Navy on June 21, 2001, and entered active duty on the same date.  He reenlisted on June 20, 2005.  On or before September 7, 2000, and prior to joining the Navy, Appellant posted a sexually explicit image of a child to his Yahoo! profile.[1]  Other Internet users could access the image on Appellant's profile.  Indeed, one purpose of the Yahoo! profile is to allow users to publicly post information on their profile page.  While on active duty, Appellant accessed his Yahoo! e-mail account, but did not update or make any modifications to his profile or the image posted on his profile.

In October 2005, the United States Attorney's Office for the District of New Jersey, along with Immigration and Customs Enforcement (ICE), conducted an investigation into a purported child pornography website called "Illegal CP."  A warrant search of the website's server revealed that Appellant paid for a membership and maintained a log-in name to access the website.  ICE collected Appellant's Yahoo! e-mail address as a result of this search.  The Naval Criminal Investigative Service became

---

[1] A Yahoo! "public profile is a page with information about [the user] that other Yahoo! members can view.  [The user's] profile allows [the user] to publicly post information about [himself] that [he] want[s] to share with the world."  Yahoo! Member Directory -- What is a public profile?, http://help.yahoo.com/l/us/yahoo/members/basics/md-06.html (last visited Dec. 3, 2008).

involved in the ICE investigation in July 2006.  On August 10, 2006, ICE Special Agent Aaron Meeks, who knew Appellant maintained a Yahoo! account, accessed Appellant's Yahoo! profile and viewed the image that Appellant had previously posted to this profile.  SA Meeks printed a hard copy of the image indicating the date of access.  The stipulation of fact indicates that Appellant had accessed his Yahoo! e-mail account a few days prior to SA Meeks's discovery of the image. Appellant did not attempt to remove the image from his profile until June 28, 2007.

Appellant was subsequently charged with distributing child pornography under the Child Pornography Prevention Act (CPPA), 18 U.S.C. § 2252A(a)(2)(A) (2000), as incorporated as a UCMJ violation by clause 3 of Article 134, UCMJ.  Specifically, specification 3 charged Appellant with distribution on or about August 10, 2006.  After agreeing to a pretrial agreement, Appellant filed a motion to dismiss for lack of jurisdiction, claiming that any distribution offense that occurred was complete prior to Appellant joining the Navy.  After hearing argument by the defense counsel, the military judge denied the motion, "finding that the charged offense does not implicate any act conducted by the accused before he entered onto active duty . . . ."

During the plea colloquy with Appellant, the military judge defined "distribute" as follows:

> Distribute means to deliver to the possession of another. Deliver means the actual, constructive or attempted transfer of an item. While transfer of child pornography may have been made or attempted in exchange for money or other property or promise of payment, proof of a commercial transaction is not required.

While the military judge did not specifically identify from what source he drew this definition, it mirrors the definition used in the Manual for Courts-Martial for drug offenses. See Manual for Courts-Martial, United States pt. IV, para. 37.c(3) (2005 ed.) (MCM). Neither party objected to the military judge's definition of distribute when given to Appellant.

On appeal, Appellant contends that the alleged offense of distributing child pornography is not subject to court-martial jurisdiction because the act of distribution was complete when he posted the image on his Yahoo! profile in September 2000 and, as both parties agree, the image was posted before he entered military service. The Government argues that Appellant engaged in a continuing act of distribution by maintaining the profile while on active duty, and thus jurisdiction exists.

ANALYSIS

Article 2, UCMJ, delimits those persons subject to court-martial jurisdiction, permitting jurisdiction over, inter alia, "[m]embers of a regular component of the armed forces . . ."

Article 2(a)(1), UCMJ, 10 U.S.C. § 802(a)(1) (2000). The Supreme Court has further delimited court-martial jurisdiction based on the time of offense. Thus, courts-martial may only exercise jurisdiction over a servicemember "who was a member of the Armed Services at the time of the offense charged." Solorio v. United States, 483 U.S. 435, 451 (1987).

This Court reviews questions of jurisdiction de novo. United States v. Harmon, 63 M.J. 98, 101 (C.A.A.F. 2006). Whether jurisdiction existed over the alleged offense depends on when the offense of "distribution" occurs. The parties agree, as do we, that this, in turn, depends on the meaning of "distribute" for the purposes of the CPPA. However, we do not agree with the manner in which the parties have cast the question. The real question is whether Appellant committed an offense of distribution on August 10, 2006, and if so, whether the military had jurisdiction over the charged offense.

The CPPA punishes:

(a) Any person who --

. . . .

(2) knowingly receives or distributes --

(A) any child pornography that has been mailed, or . . . shipped or transported in or affecting interstate or foreign commerce by any means, including by computer . . . .

18 U.S.C. § 2252A(a)(2)(A). However, the statute does not define "distribute." See id. In the absence of a statutory definition, we consider three sources: (1) the plain meaning of the term distribute; (2) the manner in which Article III courts have interpreted the term; and (3) guidance, if any, the UCMJ may provide through reference to parallel provisions of law. See Lopez v. Gonzales, 127 S. Ct. 625, 630 (2006) (in the absence of a statutory definition of a particular term, courts look "to regular usage to see what Congress probably meant"); Leocal v. Ashcroft, 543 U.S. 1, 9 (2004) ("When interpreting a statute, we must give words their 'ordinary or natural' meaning.") (citation omitted); United States v. McCollum, 58 M.J. 323, 340 (C.A.A.F. 2003) ("[W]ords should be given their common and approved usage.") (citation and quotation marks omitted). Toward this end, Appellant urges this Court to adopt the definition of "distribute" found in the Federal Sentencing Guidelines.[2] The Government urges the Court to define

---

[2] The Sentencing Guidelines for the offense of sexual exploitation of a minor state that:

> "Distribution" means any act, including possession with intent to distribute, production, advertisement, and transportation, related to the transfer of material involving the sexual exploitation of a minor. Accordingly, distribution includes posting material involving the sexual exploitation of a minor on a website for public viewing but does not include the mere solicitation of such material by a defendant.

distribution as a continuous action based on the continuing nature of the Internet posting in this case.  We begin instead with observations regarding how the term is defined elsewhere.

Black's Law Dictionary defines "distribute" as "1.  To apportion; to divide among several.  2.  To arrange by class or order.  3.  To deliver.  4.  To spread out; to disperse." Black's Law Dictionary 508 (8th ed. 2004) (emphasis added). Merriam-Webster provides the following definition:  "to divide among several or many:  deal out . . . to give out or deliver especially to the members of a group."  Webster's Third New International Dictionary Unabridged (2002), available at http://unabridged.merriam-webster.com (last visited Dec. 4, 2008).  As an example in common usage, distribute means "[to distribute] magazines to subscribers."  Id.  The definition used by the military judge comports with these dictionary definitions because the plain usage shows that delivery can complete a distribution offense.

This usage of the term is consistent with the manner in which Article III federal courts have interpreted "distribution" in the context of the CPPA.  In United States v. Shaffer, for example, the United States Court of Appeals for the Tenth Circuit concluded that the appellant distributed child pornography because he "delivered, transferred, dispersed, or

U.S. Sentencing Guidelines Manual § 2G2.2 cmt. n.1 (2008).

dispensed" the image to others using a file-sharing program. 472 F.3d 1219, 1223 (10th Cir. 2007) (quotation marks omitted). Other courts, interpreting the term "distribute" as it applies to sentence enhancements, have relied on Shaffer to define distribute:  United States v. Geiner, 498 F.3d 1104, 1109-10 (10th Cir. 2007) (finding that a transaction constitutes any act of conducting business or any action involving two or more persons, and "distribution" under the CPPA is a subset of such a transaction); United States v. Carani, 492 F.3d 867, 875-76 (7th Cir. 2007) (finding that the defendant distributed child pornography when he posted videos on a file-sharing program and knew that other users were downloading these videos from his shared folder); United States v. Griffin, 482 F.3d 1008, 1012 (8th Cir. 2007) (finding that the defendant distributed child pornography when he made files available for others to search and download on a file-sharing program); United States v. McVey, 476 F. Supp. 2d 560, 563 (E.D. Va. 2007) (holding that the defendant committed the offense of distribution because he "knew that his file-sharing software allowed others to obtain child pornography from his computer").  The parties have not identified any contrary holdings.[3]

---

[3] In his brief, Appellant cites three cases to suggest that uploading and posting an image could complete the offense of distributing child pornography.  United States v. Gross, 437 F.3d 691 (7th Cir. 2006); United States v. Griffith, 344 F.3d

The plain meaning of "distribute" and decisions by federal courts interpreting the term under the CPPA are also consistent with the definition of distribute used in the MCM for drug offenses. The explanation to the MCM defines distribute as "to deliver to the possession of another[,]" albeit in the context of the wrongful distribution of a controlled substance. MCM pt. IV, para. 37.c(3). While this definition was not intended to be used to inform interpretation of a civilian statute, and is not authoritative in that regard, it is noteworthy that the definition used by the military judge and by other federal courts is consistent with the manner in which the term "distribution" is used in the UCMJ to connote in effect both "offer" and "delivery."

Based on the foregoing, we conclude that distribution of child pornography through the Internet under the CPPA, as factually presented in this case, consisted of two acts -- (1) the posting of the image, whereby the image left the possession of the original user, and (2) delivery of the image, whereby another user accessed and viewed the image.

Here, Appellant posted a pornographic image of a child to his Yahoo! profile. A Yahoo! profile operates as a so-called

---

714 (7th Cir. 2003); United States v. Bassignani, No. CR 06-0657 SI, 2007 U.S. Dist. LEXIS 65648, 2007 WL 2406868 (N.D. Cal. Aug. 20, 2007). However, regardless of whether posting an image can constitute "distribution," we must only decide today whether Appellant distributed child pornography on August 10, 2006.

"public bulletin board" such that all Internet users can access information posted by the profile's owner.  Appellant thus posted the image for other users to view on his profile and did so before entering on active duty.  Significantly, however, Appellant stipulated that he accessed his Yahoo! account while on active duty.  He also stipulated that he had the ability to access the profile while on active duty, including the capacity to remove the image of child pornography.  Indeed, after he was already charged, Appellant took steps to remove the image on June 28, 2007, the same day on which he was convicted.  By implication, Appellant made an affirmative decision while on active duty to keep the image posted on his profile.  Thus, whether or not a civilian criminal offense may have occurred sometime in September 2000, when Appellant initially posted the image, an offense occurred under the UCMJ on August 10, 2006.  On this date, at a time when Appellant maintained control over the content on his profile, SA Meeks accessed and viewed the sexually explicit image of a child that Appellant had posted there for others to view.  This access constituted delivery of the image under the CPPA on August 10, 2006.

As a result, the court-martial had jurisdiction over the offense of distribution on August 10, 2006, a date on which all

11

parties agree Appellant was on active duty and subject to the

UCMJ.[4]

DECISION

The decision of the United States Navy-Marine Corps Court

of Criminal Appeals is affirmed.

---

[4] We do not and need not accept the Government's invitation to also decide whether Appellant could have or may have committed other military or civilian offenses on a continuing basis or any other specific date between September 7, 2000, and August 10, 2006.

STUCKY, Judge (dissenting):

Believing that, under these facts, the court-martial did not have jurisdiction, I respectfully dissent.

It is very important that the facts of this case, and its legal posture, be set out before an analysis of the situation is essayed. Appellant enlisted in the United States Navy on June 21, 2001, reenlisted without a break in service in June of 2005, and was on active duty in the Navy in August of 2006. In 2000, prior to enlisting in the Navy, he had posted a single image of child pornography on his Yahoo! profile. He last updated that profile on September 7, 2000, before entering the Navy. Thereafter, although he received e-mail at his Yahoo! e-mail account, he took no action with regard to the profile until June 28, 2007, immediately before his court-martial, when he took steps to have the image removed.

The specification at issue set out a crime and offense not capital under clause 3 of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934 (2000), viz., distribution of the image in question on or about August 10, 2006, in violation of 18 U.S.C. § 2252A(a)(2)(A) (2000), part of the Child Pornography Prevention Act of 1996 (CPPA). In the Care[1]

---

[1] United States v. Care, 18 C.M.A. 535, 40 C.M.R. 247 (1969).

inquiry, Appellant explicitly refused to admit that the conduct in question was contrary to good order and discipline or service discrediting. The military judge did not pursue the matter. It is therefore solely as a clause 3 offense that it must be analyzed.

To be subject to court-martial jurisdiction, an accused must be a member of the armed forces or a civilian who falls into one of the very narrow categories set out in the UCMJ. Article 2(a), UCMJ, 10 U.S.C. § 802(a) (2000); William Winthrop, Military Law and Precedents 105 (2d ed., Government Printing Office 1920) (1895); United States v. King, 11 C.M.A. 19, 27, 28 C.M.R. 243, 251 (1959). Appellant was neither when he posted the image to his profile. He pled guilty to a single distribution of the image in question on August 10, 2006, a date on which he was a member of the United States Navy on active duty and therefore subject to court-martial jurisdiction.

The term "distribution" is not defined in the CPPA. In the context of the statute, it has generally been interpreted in its ordinary sense, i.e., "to dispense" or "to deliver." United States v. Probel, 214 F.3d 1285, 1288 (11th Cir. 2000); United States v. Horn, 187 F.3d 781, 791 (8th Cir. 1999); United States v. Hibbler, 159 F.3d 233, 237 (6th Cir. 1998) (citing United

States v. Canada, 110 F.3d 260, 263 (5th Cir. 1997)).[2]  It would seem that delivery of the image in question was effected when Appellant placed it on his Yahoo! profile.  Thereafter, it was available to anyone who chose to look at the profile.  Appellant does not deny that this action constituted "distribution" within the meaning of the statute.

The question is thus whether Appellant's action prior to entering on active duty somehow carried over to August 10, 2006, the date on which the NCIS agent discovered the image.  The stipulation of fact entered into at trial stated that Appellant had not updated the Yahoo! profile since September 7, 2000, before entering on active duty.  The only "action" that Appellant took after becoming subject to court-martial was the purely negative one of leaving the image undisturbed.  I can find no support in the case law -- and the Government cites none -- for the proposition that simply posting an image and then taking no other action constitutes "distribution" six years later when someone happens upon the image.  The numerous cases dealing with peer-to-peer networks, e.g., United States v. Ober, 66 M.J. 393 (C.A.A.F. 2008), and United States v. Shaffer, 472 F.3d 1219 (10th Cir. 2007), are inapposite, because those

---

[2] Technically, these cases deal with the definition of the term as a sentence enhancer for CPPA offenses in the Federal Sentencing Guidelines.  However, for these purposes the two may be considered identical.

networks require continued positive actions (turning on one's computer and the file-sharing program) every time the person wishes to engage in file-sharing.  By contrast, posting a picture on the Internet requires no continued action; the picture is there, available to anyone who cares to look without further action by the originator.  On August 10, 2006, Appellant did absolutely nothing relevant to the image; the action was solely that of the NCIS agent.[3]

Nor does the concept of "continuing offense" save the specification.[4]  A continuing offense is one in which the offense is committed on a date certain but continues to be committed each day that the original fact situation obtains.  See United States v. Cores, 356 U.S. 405, 408-09 (1958).  The continuing offense doctrine is to be applied only in limited circumstances because of its obvious relationship to statutes of limitation.  Toussie v. United States, 397 U.S. 112, 115 (1970), superseded by statute, Pub. L. No. 92-129, § 101(a)(31), 85 Stat. 352 (1971).  Its application is purely a matter of

---

[3] If the offense was completed in 2000, it was also barred by the statute of limitations, since child pornography offenses are not "child abuse offenses" extending the statute.  Article 43(b), UCMJ, 10 U.S.C. § 843(b) (2000).  It is the military judge's duty to inform the accused of a potential statute of limitations defense.  See Rule for Courts-Martial 907(b)(2)(B); United States v. Rodgers, 8 C.M.A. 226, 228, 24 C.M.R. 36, 38 (1957).

[4] The Government argued the applicability of the continuing offense doctrine in its brief, but abandoned the idea in oral argument.

statutory interpretation, and is limited to situations in which Congress explicitly stated that the offense was a continuing one, or the nature of the crime compels the conclusion that Congress must have intended it.  Id.; United States v. Lee, 32 M.J. 857, 859-60 (N-M. Ct. Crim. App. 1991).  There is nothing in the CPPA making distribution a continuing offense, and nothing inherent in the nature of distribution that would compel treating it as such.  Under the standard enunciated in Toussie, it is therefore not a continuing offense.

On these facts, I believe the court-martial lacked jurisdiction over the offense of distribution of the image because Appellant's action of distribution was completed prior to entry on active duty, and he thereafter took no action to review the image or further effectuate distribution.  I emphasize that the issue of whether the same conduct might violate clause 1 or 2 of Article 134, UCMJ, is not raised here, and cannot be answered on these facts.

I respectfully dissent.